[No. B198778. Second Dist., Div. Three. Feb. 26, 2009.]

VAROJ NAZARI, Plaintiff and Appellant, v.
SET AYRAPETYAN, Defendant and Respondent.

**COUNSEL**

Troxell & Associates, Richard M. Foster; Law Offices of Vip Bhola & Associates and Vip Bhola for Plaintiff and Appellant.

Veatch Carlson, Mark A. Weinstein and Dawn M. Oster for Defendant and Respondent.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

In his personal injury action against defendant Set Ayrapetyan, plaintiff Varoj Nazari obtained a special verdict in his favor. He appeals from the ensuing $53,061.40 judgment and the order denying his new trial motion. At issue in the published portion of this opinion is Evidence Code section 755.5, which renders inadmissible the record of, or testimony concerning, a defendant's medical examination conducted of a plaintiff who is not proficient in English without the aid of a certified interpreter. We hold that section 755.5 does not prohibit testimony of medical examinations that do not involve communication with the plaintiff. Therefore, the court's ruling limiting the testimony of three defense physicians to their observations, results of non-language-dependent tests, and review of plaintiff's physician's records, was not error. In the unpublished portion of this opinion, we affirm the trial court's ruling denying plaintiff's new trial motion on other grounds. Accordingly, we affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 27, 2003, defendant invited plaintiff to his house for tea. In the backyard, defendant offered to pick an orange for plaintiff. Defendant stood

on a stool to pick the fruit, but lost his balance while reaching too far and fell. Defendant landed on plaintiff, who was leaning over to serve himself tea. The force of defendant's 215 pounds pushed plaintiff's face into the tea service that defendant had placed on a rock. The fall pushed plaintiff's left eye and cheek into the cups and tray. Defendant acknowledged that he had lost his balance on the same stool a "couple [of] times" in the past.

Plaintiff was standing two to three feet from defendant when the latter grabbed the stool to pick the orange. Plaintiff saw the orange tree and the four-legged stool in defendant's hand. Plaintiff testified he did not offer to help defendant when the latter climbed up onto the stool. Nor did he move away. Instead, plaintiff turned to serve himself tea.

Having sustained injuries to his face and eye, plaintiff brought this negligence action against defendant.

After trial, the jury rendered a special verdict finding that defendant was negligent and that his negligence was a substantial factor in causing plaintiff's harm. The jury found plaintiff sustained a total of $75,802 in damages, comprised of:

$25,802 in past economic damages,

$0 future economic damages,

$50,000 in past noneconomic loss, and

$0 in future noneconomic loss.

The jury also found that plaintiff was 30 percent negligent. After subtracting plaintiff's comparative negligence, the trial court awarded plaintiff $53,061.40.

Plaintiff moved for a new trial on the following grounds: (1) inadequate damages; (2) irregularity in the proceedings; and (3) jury misconduct. (Code Civ. Proc., § 657.) The trial court denied plaintiff's new trial motion on all grounds raised by plaintiff and ruled on objections raised to six juror declarations. Plaintiff's appeal followed.

Additional facts will be discussed in connection with the relevant issues below.

## DISCUSSION

The standard of review of the denial of a motion for new trial is as follows: " '[A] trial judge is accorded a wide discretion in ruling on a motion for new

trial and . . . the exercise of this discretion is given great deference on appeal. [Citations.] However, we are also mindful of the rule that on an appeal from the judgment it is our duty to review all rulings and proceedings involving the merits or affecting the judgment as substantially affecting the rights of a party [citation], including an order denying a new trial. In our review of such order *denying* a new trial, as distinguished from an order *granting* a new trial, we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial.' . . . Prejudice is required: '[T]he trial court is bound by the rule of California Constitution, article VI, section 13, that prejudicial error is the basis for a new trial, and there is no discretion to grant a new trial for harmless error.' [Citation.]" (*Sherman v. Kinetic Concepts, Inc.* (1998) 67 Cal.App.4th 1152, 1160–1161 [79 Cal.Rptr.2d 641].)[1]

1.   *The damages were not inadequate.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2.   *The trial court did not violate Evidence Code section 755.5 by limiting the testimony of defense witnesses Drs. Wallace, O'Connor, and Grossan to observable facts, non-language-dependent tests, and review of plaintiff's physician's records.*

Evidence Code section 755.5 requires: "During any medical examination, requested by an insurer or by the defendant, of a person who is a party to a civil action and who does not proficiently speak or understand the English language, conducted for the purpose of determining damages in a civil action, *an interpreter shall be present to interpret the examination in a language that the person understands.*" (§ 755.5, subd. (a), italics added.) The interpreter must be certified according to Government Code requirements. (*Ibid.*) "*The record of, or testimony concerning, any medical examination conducted in*

---

[1] We take a slight detour to make an important point about appellate briefing. While it is the duty of the appellate court in reviewing the denial of a new trial motion to review the entire record, on appeal it is manifestly "the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing *exact page citations.* [Citations.]" (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [277 Cal.Rptr. 401], italics added, citing Cal. Rules of Court, rule 8.204(a)(1)(C), former rule 15(a).) Plaintiff's single citation to a reporter's transcript with block page references, for example, "RT Vol 6, 2480-2501," frustrates this court's ability to evaluate *which facts* a party believes support his position, particularly when a large portion of that citation referred to points that appeared to be irrelevant. Our task in setting out the facts has been severely hampered by plaintiff's failure to comply with rule 8.204(a)(1)(C). (*Spangle v. Farmers Ins. Exchange* (2008) 166 Cal.App.4th 560, 564, fn. 3 [82 Cal.Rptr.3d 763].) Instead of striking the brief, however, we have chosen to disregard defects and consider the brief as if it were properly prepared. (Cal. Rules of Court, rule 8.204(e)(2)(C).)

[*]See footnote, *ante,* page 690.

*violation of subdivision (a) shall be inadmissible in the civil action for which it was conducted or any other civil action.*" (§ 755.5, subd. (c), italics added.)

Plaintiff is not proficient in English. Drs. David Wallace, Edward Joseph O'Connor, and Murray Grossan examined plaintiff for the defense while a friend of plaintiff's translated. Because the interpreter was not certified, plaintiff moved in limine to preclude the testimony of the three physicians for violation of Evidence Code section 755.5. Nonetheless, plaintiff stipulated that Dr. Wallace could testify. Concluding that Evidence Code section 755.5 precluded admission of "anything that involves the language for communication," the court ruled that Drs. O'Connor and Grossan could not testify about conversations they had with plaintiff or any statement plaintiff made. However, the court allowed the doctors to testify about what they found in their review of the medical records, their observations, and their opinions resulting therefrom and as to opinions reached in the independent medical examination. On appeal, plaintiff contends that the trial court's ruling violated section 755.5 of the Evidence Code.

■ Research has revealed no cases addressing the meaning or scope of Evidence Code section 755.5. In interpreting a statute, we apply long-standing rules. " 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.]' " (*Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 116 [54 Cal.Rptr.3d 28].) "If the language of a statute is unambiguous, the plain meaning governs and it is unnecessary to resort to extrinsic sources to determine the legislative or voters' intent. [Citation.]" (*Id.* at p. 107.) That is, " '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" [Citations.]' [Citation.]" (*Id.* at pp. 116–117.)

■ The language of Evidence Code section 755.5, quoted above, is plain. It clearly bans the admission of medical records or medical examinations that defendants or insurance companies conduct for purposes of determining damages in a civil action without the aid of a certified interpreter when the plaintiff is not English proficient. (*Id.*, subds. (a), (c).) The statute does not appear to preclude the records or examinations conducted on behalf of the *plaintiff*, even absent a certified interpreter.

Plaintiff asks us to construe Evidence Code section 755.5 to preclude testimony about and records of medical tests for which language or communication is unnecessary to the evaluation and an interpreter is not called upon to translate. He asserts that all medical examinations require communication. We disagree with plaintiff's construction of the statute because it ignores the realities of certain medical examinations.

■ Logically, the statute prevents the admission of evidence of a defense examination based on a miscommunication. But, not all medical examinations are language dependent. For example, a phlebotomist can draw and evaluate a plaintiff's blood without ever speaking with the plaintiff. A doctor can silently test a patient's reflex. In the area of criminal law, fingerprinting, photographing, drawing blood, or taking measurements, do not violate an accused's Fifth Amendment privilege against self-incrimination (*Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1111 [77 Cal.Rptr.3d 287, 183 P.3d 1250], citing *Schmerber v. California* (1966) 384 U.S. 757, 763–764 [16 L.Ed.2d 908, 86 S.Ct. 1826]) because the privilege protects " 'compelled testimonial or communicative disclosures by an accused, but not . . . "real" or "physical" evidence derived from him. [Citations.]' " (*Verdin, supra*, at p. 1111.) While the language of Evidence Code section 755.5 appears more broadly to preclude admission of all records and examinations of a plaintiff conducted in violation of that statute, without reference to or exception for communication, we do not think the Legislature intended the statute to be so wide-ranging as plaintiff suggests. Where no words are exchanged, it would be meaningless to bar admission of the phlebotomist's record and examination of the blood sample, or the results of a reflex test, merely because a certified interpreter had not been present. A holding that Evidence Code section 755.5 precludes testimony about medical examinations that do not require any communication with the plaintiff would be absurd because no translation would be necessary. We avoid construing a statute in a way that would lead to absurd results. (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350, 362 [12 Cal.Rptr.3d 12].) Accordingly, we hold that Evidence Code section 755.5 does not prohibit admission into evidence of the record of, or testimony concerning, evidence derived from tests or examinations that require no communication with the plaintiff. The trial court did not err in allowing defendant's physicians to testify about those records and examinations of plaintiff which, although conducted without the aid of a certified interpreter, did not require any conversation with plaintiff.

As a cautionary note, it is only reasonable to require plaintiff to alert the defense to the need for a certified interpreter under Evidence Code section 755.5 as early in the litigation as possible so that prophylactic measures may be taken. To do otherwise, would promote sandbagging and gamesmanship.

With this conclusion in mind, we address the testimony of Drs. Wallace, O'Connor, and Grossan seriatim.

First, plaintiff cannot be heard to challenge Dr. Wallace's testimony for violation of Evidence Code section 755.5 because plaintiff specifically stipulated that Dr. Wallace would be able to testify even though a certified interpreter had been absent during his examination. It is a long-standing principle of appellate law that where a party by its own conduct induces the commission of an error, it may not claim on appeal that the judgment should be reversed because of that error. (*Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 842 [84 Cal.Rptr.3d 452].)

Recognizing this stipulation, plaintiff attacks a portion of Dr. Wallace's testimony discussing the results of his colleague Dr. Kim's examination of plaintiff using an eye chart. However, improperly admitted evidence only requires reversal or modification when it is reasonably probable a result more favorable to the complaining party would have been reached absent the error. (Cal. Const., art. VI, § 13 [no judgment shall be set aside on the ground of evidentiary error unless error resulted in miscarriage of justice]; Code Civ. Proc., § 475 [reviewing court must disregard nonprejudicial error and presume trial court error nonprejudicial]; see *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].) As plaintiff acknowledges, Dr. Kim's eye examination was only "*one* of the bases for his [Dr. Wallace's] opinion that [plaintiff] was faking." (Italics added.) Indeed, Dr. Wallace discussed a number of other factors that led him to conclude that plaintiff was exaggerating his injury, none of which relied on communication with plaintiff. In particular, Dr. Wallace testified that he became suspicious upon first meeting plaintiff because plaintiff acted as though his injury were acute by walking into Dr. Wallace's office with a tissue over his left eye, even though this meeting occurred *more than a year after the accident.* Thus, Dr. Wallace's suspicions were aroused by observable body language. Also, Dr. Wallace related his findings based on his funduscopic, microscopic, and opthalmoscopic examinations, the afferent pupillary defect test, and a simple test using a mirror, none of which required communication with plaintiff. And Dr. Wallace discussed plaintiff's treating physician's findings based on his records and examinations. Where plaintiff's physicians' records do not fall within the scope of Evidence Code section 755.5, defendant's doctors' review of those records does not violate the statute. Accordingly, even if Dr. Wallace's reference to Dr. Kim's examination fell outside the scope of the stipulation, the testimony was cumulative of other admissible testimony, and hence not prejudicial. (*Sherman v. Kinetic Concepts, Inc., supra,* 67 Cal.App.4th at p. 1161.)

Next, plaintiff challenges Dr. O'Connor's testimony. Dr. O'Connor testified about his review of reports and examinations of plaintiff's expert and treating

physicians and repeated the negative findings with respect to optic nerve injury. He also reviewed the same visual evoked potential test[4] results that plaintiff's own experts had used. Plaintiff's witness, Dr. Roger Bertoldi, testified that the VEP test is not dependent on thought, is completely objective, and can be used on comatose patients to determine whether they have any cortical function. Hence, Dr. O'Connor's testimony did not violate Evidence Code section 755.5.[5]

Finally, plaintiff challenges the admission of Dr. Grossan's testimony about his own visual evaluation of plaintiff's teeth, temporomandibular joint, and nasal cavity, and about conclusions he reached upon review of the medical records submitted by plaintiff's witnesses. As with Drs. O'Connor and Wallace, Dr. Grossan's opinions were derived from plaintiff's doctors' examinations or from extrinsic, observable phenomena, not from communications Dr. Grossan had with plaintiff or with an interpreter. Therefore, his testimony did not contravene Evidence Code section 755.5. Even if the trial court erred in admitting Dr. Grossan's testimony that plaintiff's dental problems were caused by poor hygiene, the admission did not prejudice plaintiff and hence does not require reversal. By the time Dr. Grossan was called to the stand, plaintiff's own expert, Dr. Vahan Ananian, had already testified that plaintiff had not claimed to suffer from temporomandibular joint pain until *more than three years after the accident*. Thus, Dr. Grossan's testimony was cumulative and manifestly not prejudicial.

■ For the foregoing reasons, we conclude that plaintiff may not be heard to complain about the admission of Dr. Wallace's testimony because he stipulated to it. We further conclude, notwithstanding the absence of a certified interpreter during plaintiff's visits with them, that the admission of Drs. Wallace's, O'Connor's, and Grossan's testimony did not violate Evidence Code section 755.5, either because those doctors testified about medical examinations of plaintiff conducted by plaintiff's own physicians or because they relied on tests or examinations that are not language- or communication-dependent. The portion of Dr. Wallace's testimony that did violate section 755.5, because based on his communication with plaintiff, did not prejudice plaintiff because it was cumulative. Accordingly, reversal is not required.

---

[4] Visual evoked potential (VEP) and visual evoked response (VER) tests evaluate optic pathways and determine optic nerve injury. The tests look at the response to a flash of light stimulus that generates an electrical response in the retina. The light is translated into an electrical impulse that travels to the occipital lobe. A recording electrode is placed on the back of the head over the occipital lobe to measure the electrical response to the light flash. A normal flash VER indicates that the light flash is being normally transmitted through a patient's pathways to the occipital lobe and so all optic nerve pathways are working.

[5] Plaintiff's remaining contentions concerning Dr. O'Connor's testimony went merely to the weight of his testimony. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 633 [85 Cal.Rptr.2d 386].)

3. *There was no evidence of juror misconduct such as would justify reversal.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Croskey, Acting P. J., and Kitching, J., concurred.

---

*See footnote, *ante*, page 690.