Filed 5/9/16  Sandoval v. City of Los Angeles CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOSE SANDOVAL, | B262748 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC557365) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of the County of Los Angeles, Howard L. Halm, Judge.  Affirmed.

Onwaeze Law Group, and Ogochukwu Victor Onwaeze, for Plaintiff and Appellant.

Pollak, Vida & Fisher, and Daniel P. Barer, for Defendant and Respondent.

Plaintiff and appellant Jose Sandoval appeals from the trial court's order denying his petition under Government Code section 946.6[1] for relief from the claim filing requirements of section 945.4. Plaintiff contends the trial court erred in finding (1) there was no mistake, inadvertence or excusable neglect on the part of the plaintiff or his attorney, and (2) plaintiff's attorney had a duty to investigate all other potential claims plaintiff may have against defendant and respondent County of Los Angeles. We affirm the order.

## FACTUAL BACKGROUND

In August 2013, plaintiff went to a Los Angeles medical facility—Los Angeles County University of Southern California Medical Center (LAC USC Medical Center or hospital)—complaining of several injuries, including a spleen laceration, he suffered from an automobile accident. He was hospitalized for treatment at that facility from August 6, 2013 to September 30, 2013, during which time, according to plaintiff, "medical personnel at LAC USC Medical Center failed to properly diagnose and or treat [plaintiff's] condition, especially the laceration to [plaintiff's] spleen," and he underwent "major surgery to correct extensive bleeding in [his] stomach." Plaintiff "was discharged [from the hospital] with a colostomy bag which [he] had to [use] for a long time . . . ."

Following the accident, plaintiff retained a lawyer "to handle [his] automobile accident claim," but that lawyer "was suspended [by] the California State Bar and could no longer handle [plaintiff's] case" (suspended lawyer).[2] On or about October 4, 2013, plaintiff consulted another attorney, Philip Falese, regarding plaintiff's involvement in the automobile accident. Plaintiff informed Falese's office that he was hospitalized for

---

[1] All statutory citations are to the Government Code unless otherwise noted.

[2] The record does not show this attorney performed any work on the case.

2

treatment from August 6, 2013 to September 30, 2013, "and that he had undergone some surgery." Plaintiff and Falese both declared that at the time plaintiff informed Falese's office of his hospitalization, he "was not aware of the particular reason for the prolonged stay and surgery that [he] underwent at the facility."

Plaintiff declared he retained Falese "to handle [his] automobile accident claim for which [he] was initially transported to LAC USC Medical Center." According to plaintiff, "[he] had related [his] treatment at LAC USC Medical Center to [his] attorney, but at that time [plaintiff] was not aware of the particular reason for the prolonged stay and surgery that [he] underwent at the facility . . . . [He] did not at that time know or suspect that the physicians had rendered treatment to [him] that was below the standard of care. However, [he] also expected that [his] medical records from the facility would be obtained immediately by [his] counsel."

Falese declared his office requested plaintiff's medical records, but "only as preparatory t[o] the resolution of the claim against the at[-]fault party for the automobile accident." The hospital's health information manager declared their records did not indicate either Falese or his office requested plaintiff's medical records directly from the hospital. Hospital records reflected three requests were made, but the record does not show that any of these requests were made on behalf of Falese, his office, or plaintiff. Two of the requests were made by Unisource Discovery, on behalf of an insurance company; those requests were received by the hospital on December 11, 2013, and the hospital mailed the medical records to Unisource Discovery on January 31, 2014.[3] The third request was made by plaintiff's appellate counsel, Ogochukwu Victor Onwaeze, on September 15, 2014, and the hospital provided the records on October 20, 2014.

Plaintiff declared, on information and belief, Falese did not "receive or review" the medical records until more than six months after plaintiff was discharged from the

---

[3]     The mailing occurred almost six months after plaintiff's admission into the hospital, and almost six months before plaintiff, as noted below, presented to defendant a claim for damages to person or property (claim) and an application for leave to present a late claim.

hospital on September 30, 2013. Falese declared his office did not receive plaintiff's medical records "until after the six months time period for the filing of governmental claims had expired."[4] Plaintiff declared, "Prior to the receipt of the medical records post the expiration of the six months period for the filing of the government claim, neither [plaintiff] nor [Falese] suspected that [plaintiff] had received treatment below the standard of care at [the hospital] and that a potential claim against [defendant] existed."[5]

Plaintiff "was under the impression" that, in addition to "handling [his] automobile [accident] claim," Falese "was also working on any other potential claims [plaintiff] might have against any other person or entity arising from the incident, which would have included wrongdoing by the medical personnel at LAC USC Medical Center based on the review of the medical records that had been belatedly obtained." Plaintiff declared, "As it turned out, [Falese] was only working on the automobile damage and bodily injury aspects of the claim."

Around June 2014, plaintiff asked Falese "if any action was going to be taken" regarding the medical treatment plaintiff received at the hospital. "It was during that discussion that the misunderstanding and or misconception" between plaintiff and False regarding the scope of Falese's representation of plaintiff "was discovered." Falese declared he informed plaintiff at that time "that he should seek counsel to handle any professional negligence claim [plaintiff] might have against the County of Los Angeles since [Falese's] office does not handle that kind of work." Plaintiff immediately retained Onwaeze as counsel to pursue his claim against defendant. Plaintiff declared "[t]he belated receipt and review of the medical records from [the hospital] caused the claim not to be filed within the six months limitation period."

---

**4**      As noted below, ultimately the trial court determined that plaintiff's claim against defendant arose on August 6, 2013 (the same date plaintiff was admitted to LAC USC Medical Center). Plaintiff does not challenge this finding.

**5**      Citing to an unintelligible portion of Falese's declaration, defendant concedes this.

4

## PROCEDURAL BACKGROUND

On July 15, 2014, plaintiff, through attorney Onwaeze, presented to defendant both a claim and an application for leave to present a late claim under section 911.4. The claim alleged the damage or injury occurred on August 7, 2013—the day after plaintiff was admitted to the hospital. It described the damage or injury as follows: "[Plaintiff] was admitted [to] LAC USC Medical Center . . . post a motor vehicle accident. [Plaintiff] had several injuries including a lacera[ted] spleen. Doctors at the hospital failed to proper[ly] diagnose and or treat the lacerated spleen resulting in [plaintiff] having a major surgery." The late claim application alleged "[t]he failure to file the claim within the period mandated in [section] 911.2 was due to mistake inadvertence and/or surprise in that there was miscommunication between [plaintiff] and his attorney that was handling the personal injury claim as to [that attorney's] scope of representation [of plaintiff]." On August 6, 2014, defendant denied plaintiff's application and returned the claim to plaintiff.

On September 11, 2014, plaintiff filed a complaint for damages against defendant alleging one cause of action—professional negligence (medical malpractice).[6] Plaintiff alleged in the complaint plaintiff "presented to [the hospital] for examination, care and treatment for his medical complaints and problems, including but not limited to trauma to several parts of his body arising from an automobile accident." Plaintiff further alleged defendant breached its duty of care by, among other things, "failing to properly diagnose the plaintiff's condition, [and] failing to monitor the treatment and care of the plaintiff."

On December 16, 2014, plaintiff filed with the trial court a petition for an order relieving him from the claim filing requirements of section 945.4. The petition sought relief under subdivision (c)(1) of section 946.6, based on "mistake, inadvertence, surprise, or excusable neglect." Plaintiff alleged in the petition there was "mistake

---

[6]     According to plaintiff, the complaint was filed at that time "to avoid the expiration of the one year statute of limitations for the filing of claims for professional negligence."

5

inadvertence and/or surprise in that [plaintiff's] medical records . . . were not received and reviewed prior to the expiration of the six months period for the filing of the claim and [plaintiff] did not suspect that there had been treatment below the standard of care that [w]as rendered to him until the medical records were received and reviewed. Furthermore there was a misunderstanding and or misconception between [plaintiff] and counsel about the scope of representation." Defendant opposed the motion and objected to portions of plaintiff's declaration submitted in support of the petition.

The trial court overruled defendant's objections and denied plaintiff's petition. In so doing, it made the following findings: plaintiff's cause of action against defendant arose on August 6, 2013; the petition was timely filed; plaintiff failed to discover he might have a malpractice claim until after he received his medical records, which was after the time to present a claim to defendant had expired; although Falese declared his office requested the records, he did not state when they were requested or from whom, and county records indicated Falese never requested the records from the hospital; Falese's lack of diligence did not constitute excusable neglect; Falese's inexcusable neglect in not promptly obtaining the records was imputed to plaintiff; through a communication error, Falese failed to research whether plaintiff had a medical malpractice claim; Falese should have clarified the scope of his representation to plaintiff and informed him that he might have claims in addition to those for bodily injury and property damage; the communications error does not demonstrate excusable neglect; and Falese's lack of diligence was imputed to plaintiff.

The following exchange occurred at the hearing:

"[Plaintiff's counsel]: [T]he question is whether the court is saying that a counsel that is retained to handle a personal injury case in an automobile accident is under a duty to get the medical records within six months of the accident.

"The Court: Well, if I am counsel for the plaintiff, and if . . . I am retained within the six month period of time, which [] Falese was, then it would seem reasonably prudent for me as counsel to at the very minimum obtain the records so at least I can present a discussion of the damages, the economic damages, from those records at least in the

6

accident case at the very minimum. [¶] And also by the fact that the client is in the hospital for an automobile accident, he's in the hospital . . . of I think it was six weeks was it not?

"[Plaintiff's counsel]: Almost six, seven weeks, yes.

"The Court: Six or seven weeks I think would [have] set off some bells and whistles in terms of what was the reason. What was the reason he had to be in the hospital for such a long period of time. [¶] And at least all of these would at least leave me as counsel to make some inquiries. And at the very minimum you'd want the medical records to make a determination as to what the problem was. So that was the problem, as far as the information that was provided by defense counsel, he didn't get the medical records, let alone try to get them.

"[Plaintiff's counsel]: [A]ll I can say to the court is when [plaintiff] came to me, he had the records. The records were obtained by . . . Falese at some point.

"The Court: [W]hatever neglect was committed by the counsel Falese is imputed to the plaintiff. [¶] And for all the reasons that I stated in the tentative ruling, there was neglect that was not excusable because it was not conduct of an ordinarily reasonably prudent lawyer under the circumstances given the facts that were being presented to that lawyer. [¶] [Plaintiff had a] six or seven week stay in the hospital. The fact there were no medical records that were obtained to even investigate what the reasons were for that length of a stay or what the injuries were. So at the very minimum, the injuries—at the very minimum, counsel for the plaintiff would have a working knowledge of what those injuries were to evaluate the case and to make whatever claims he might want to make as far as the auto accident is concerned. [¶] All of that amounted to neglect that was not excusable that is the problem that we have here."

**DISCUSSION**

**A.     Defendant's Request to Strike Plaintiff's Opening Brief**

Defendant requests we strike plaintiff's opening brief because it is not adequately supported by citations to the record. Defendant complains plaintiff's summary of facts is almost three pages, and those facts are only supported with a citation to the record at the end of the statement. We decline defendant's request.

Although it is improper for plaintiff to only cite to the record at the end of his statement of facts (Cal. Rules of Court, rule 8.204(a)(1)(C); *Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 694, fn. 1 (*Nazari*), we will disregard this impropriety (*Nazari*, *supra*, 171 Cal.App.4th at p. 694, fn. 1 ["Instead of striking the brief" we may chose "to disregard defects and consider the brief as if it were properly prepared"].) We disregard the defects because the record on appeal is relatively short—the clerk's transcript consists of 122 pages (one volume), and the reporter's transcript consists of 11 pages (one volume). In addition, defendant fails to identify any portion of plaintiff's argument that should be stricken or disregarded as unsupported by citation to the record.

**B.     Relief from the Claims Filing Requirements**

*1.     Standard of Review*

A trial court has broad discretion to grant or deny a petition for relief under section 946.6 and its determination will not be disturbed on appeal absent an abuse of discretion. (*People ex rel. Dept. of Transportation v. Superior Court* (2003) 105 Cal.App.4th 39, 44.) A trial court abuses its discretion when it exceeds the bounds of reason by making a determination that is arbitrary, capricious, or patently absurd. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

## 2. *Applicable Law*

No suit for money may be brought against a governmental entity for personal injury, death, or damage to personal property or crops unless a formal claim has been presented to such entity and the claim has been rejected. (§ 945.4;[7] see *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1776 (*Munoz*).) The claim must be presented to the governmental entity "not later than six months after the accrual of the cause of action." (§§ 911.2, subd. (a),[8] 915, subd. (a);[9] *Munoz, supra*, 33 Cal.App.4th at p. 1779.)

If a claimant fails to present a claim within the statutory period, he or she may apply "within a reasonable time not to exceed one year after the accrual of the cause of action" to the public entity for leave to present a late claim. (§ 911.4, subds. (a) and (b).[10]) The application must state the reason for the delay. (§ 911.4, subd (b).)

---

[7] Section 945.4 provides, "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."

[8] Section 911.2, subdivision (a) states in part, "A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

[9] Section 915, subdivision (a) provides, "(a) A claim, any amendment thereto, or an application to the public entity for leave to present a late claim shall be presented to a local public entity by either of the following means: [¶] (1) Delivering it to the clerk, secretary or auditor thereof. [¶] (2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal office."

[10] Section 911.4 provides in part, "(a) When a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim. [¶] (b) The application shall be presented to the public entity as provided in Article 2 (commencing with Section 915) within a reasonable time not to

9

If the public entity denies the late claim application, a claimant may petition the court under section 946.6, subdivision (a)[11] for relief from the requirements of sections 911.2, and 945.4. (*Munoz, supra*, 33 Cal.App.4th at p. 1777.) "The court shall relieve the petitioner from the requirements of Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed [one year after the accrual of the cause of action] . . . and that . . . : [¶] (1) The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4." (§ 946.6, subd. (c).)

"The mere recital of mistake, inadvertence, surprise or excusable neglect is not sufficient to warrant relief. Relief on grounds of mistake, inadvertence, surprise or excusable neglect is available only on a showing that the claimant's failure to timely present a claim was reasonable when tested by the objective 'reasonably prudent person' standard." (*Department of Water & Power v. Superior Court* (2000) 82 Cal.App.4th 1288, 1293 (*Department*).) The party seeking relief based on a claim of mistake must establish he was diligent in investigating and pursuing the claim. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276.) "A petitioner must show more than that he did not discover a fact until too late; he must establish that in the use of reasonable diligence he failed to discover it." (*Black v. County of Los Angeles* (1970) 12 Cal.App.3d 670, 677 (*Black*).)

"[I]t is not every mistake that will excuse a default, the determining factor being the reasonableness of the misconception. [Citation.] This principle likewise applies to excusable neglect, which is '"that neglect which might have been the act of a reasonably

_____

exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim. The proposed claim shall be attached to the application."

[11]     Section 946.6, subdivision (a) provides in part, "If an application for leave to present a claim is denied or deemed to be denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from Section 945.4."

prudent person under the same circumstances."' [Citation.]" (*Shank v. County of Los Angeles* (1983) 139 Cal.App.3d 152, 157 (*Shank*).) *Shank* explained: "'It is not the purpose of remedial statutes to grant relief from defaults which are the result of inexcusable neglect of parties or their attorneys in the performance of the latter's obligation to their clients.' [Citation.]" (*Ibid.*)

### 3. Analysis

Plaintiff contends, based on Falese's declaration, Falese's representation of plaintiff was limited to the automobile accident claim. Plaintiff argues therefore Falese acted reasonably in not obtaining the medical records until after six months from the accrual of plaintiff's claim against defendant because the medical records were only relevant to damages in the automobile accident claim, and Falese had two years to file a personal injury lawsuit arising out of the automobile accident.

The record does not contain a retainer agreement. But, even if Falese was only representing plaintiff in connection with the automobile accident, Falese was not reasonably diligent in obtaining plaintiff's medical records at the outset of his representation to determine, and have a working knowledge of, the nature and extent of plaintiff's damages or the identification of other possible tortfeasors concerning plaintiff's injuries. Once retained, an attorney has a duty to diligently investigate the facts and identifying possible defendants. (*Ebersol v. Cowan* (1983) 35 Cal.3d 427, 439; *Department*, *supra*, 82 Cal.App.4th at p. 1294, fn. 3.)

Information readily available to a plaintiff to determine the facts and identify possible defendants include a review of incident reports, visits to the scene of the accident, inquiries of nearby businesses, inquiries of police officers who investigated the incident, and a review of the injured party's medical records. (*Black*, *supra*, 12 Cal.App.3d 670; *Department*, *supra*, 82 Cal.App.4th 1288; *Rojes v. Riverside General Hospital* (1988) 203 Cal.App.3d 1151 (*Rojes*), overruled on another point in *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1607; *Shank*, *supra*, 139 Cal.App.3d 152; *City of Fresno v. Superior Court* (1980) 104 Cal.App.3d 25.) Plaintiff does not dispute his

11

medical records from the hospital were readily available to him or Falese. Indeed, Falese declared his office ultimately requested and received the medical records.

In addition, a lawyer who represents a client, whether in connection with an automobile accident or a medical malpractice claim, involving a governmental entity (i.e., for "personal injury, death, or damage to personal property") knows or should know timely claims against the governmental entity must be made. (§§ 911.2, subd. (a), 915, subd. (a); 945.4; *Stromberg, Inc. v. L. A. County Flood etc. Dist.* (1969) 270 Cal.App.2d 759, 767 [attorneys are "'charged with knowledge of the law in California' [citation] requiring compliance with the claims statute"].) Falese may not specialize in medical malpractice, but he presumably knew such claims exist. If a tortfeasor negligently injures a victim, and a medical professional who treats the injury aggravates it, the victim can sue both the original tortfeasor and the medical professional for the aggravated injury. (*Henry v. Superior Court* (2008) 160 Cal.App.4th 440, 445, 455.) Because Falese knew plaintiff had been in the hospital for almost two months, Falese should have investigated the reason plaintiff was required to be in the hospital for such a long period of time by, among other things, obtaining plaintiff's medical records. Indeed, it appears when Falese finally obtained and reviewed plaintiff's medical records, the proverbial "light bulb went off"—he knew (or at least suspected) plaintiff had a medical malpractice claim against defendant.

Furthermore, if an attorney seeks to reasonably limit the scope of his representation, "counsel must make such limitations in representation very clear to his client." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687.) Here, the record does not indicate Falese specifically and unambiguously advised plaintiff that Falese's representation of him was limited only to the automobile accident claim. It was reasonably foreseeable plaintiff would rely on Falese "to describe the array of legal remedies available," and "if appropriate, indicate limitations on the retention of counsel and the need for other counsel." (*Ibid*.)

Plaintiff alleged in his late claim application filed with defendant: "[t]he failure to file the claim within the period mandated in [section] 911.2 was due to [a]

12

miscommunication between [plaintiff] and his attorney that was handling the personal injury claim as to [that attorney's] scope of representation [of plaintiff]." Plaintiff also alleged in his application filed with the trial court requesting an order relieving him from the claim filing requirements: "there was a misunderstanding and or misconception between [plaintiff] and counsel about the scope of representation." Although, at the time plaintiff retained Falese, plaintiff did not know or suspect the physicians at the hospital rendered treatment to him below the standard of care, plaintiff nevertheless "expected" Falese to "immediately" obtain from the hospital his medical records. Plaintiff declared he "was under the impression" that, in addition to "handling [his] automobile personal injury claim," Falese "was also working on any other potential claims [plaintiff] might have against any other person or entity arising from the incident, which would have included wrongdoing by the medical personnel at LAC USC Medical Center based on the review of the medical records that had been belatedly obtained." It could be reasonably inferred plaintiff had this impression at the time he retained Falese.[12] There is nothing in the record to suggest Falese made it "very clear" to plaintiff that Falese's representation of plaintiff was limited only to the automobile accident claim.

Plaintiff failed to establish "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect." (§ 946.6, subd. (c)(1).) Based on the record, the trial court's denial of plaintiff's petition was not arbitrary, capricious, or patently absurd. (*In re Stephanie M*., *supra*, 7 Cal.4th at p. 318.)

---

[12] We are required to draw all reasonable inferences in favor of the trial court's decision. (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

13

## DISPOSITION

The order is affirmed.  Defendant is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KUMAR, J.[*]


We concur:


TURNER, P. J.


KRIEGLER, J.

---

[*]   Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14