Filed 8/29/16  Hanson v. LeClerc CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| WILLIAM HANSON, | C077860 |
| Plaintiff and Appellant, | (Super. Ct. No. 156254) |
| v. | |
| RAOUL LeCLERC, as Special Administrator, etc., | |
| Defendant and Respondent. | |

Defendant George Martin ran a red light while driving his van and struck the left fender of plaintiff William Hanson's car.  A jury found Martin's negligence was not a substantial factor in causing Hanson's alleged injuries.  Hanson filed a motion for a new trial, which the trial court denied.  On appeal, Hanson contends insufficient evidence supports the jury's verdict and the court erred in denying his motion for a new trial.  We shall affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Following the accident, Hanson filed a complaint for negligence against Martin. During the course of the litigation, Martin died.  Raoul LeClerc, as special administrator

1

for the estate of George Martin, was substituted in his stead. The parties disagreed as to whether all of the medical treatment claimed by plaintiff was related to the accident but stipulated that the reasonable and necessary medical charge for the treatment claimed was $107,111.33.

The following evidence was introduced at the jury trial.

**The Accident**

On March 21, 2010, Hanson was driving about two miles per hour in the process of making a left turn. Martin, driving a van, was going about 15 to 20 miles per hour when the van struck Hanson's car.

The only damage to Hanson's car was that the plastic bumper cover came off. Hanson's car suffered no damage to the subframe or to the bumper itself. Photos taken after the accident show no other damage to Hanson's car. No one was reported injured and the police did not come to the accident scene. After the accident, Hanson drove to Redding, approximately an hour and a half away.

Nine days after the accident, Hanson gave a statement in which he described the accident as his car having been "clipped" and that it was a "glancing blow." Four years later, prior to trial, Hanson's girlfriend and her son, who had been in the car at the time of the accident, stated that Hanson's car turned 90 or 80 degrees when struck. At trial, Hanson stated his car was knocked 90 degrees in the accident.

**Hanson's Injuries**

Hanson testified he felt pain the day after the accident and went to the emergency room at Shasta Regional Medical Center. Hanson returned to work after missing three days. He worked at his job, which included raking, mowing, and trimming trees, for the following five months without any special accommodations.

Although Shasta Regional Medical Center instructed him to follow up in five days at Shasta Community Health Center, Hanson did not do so. Instead, a week later, he went to Mercy Hospital.

A few weeks later, Hanson's attorney referred him to Dr. Julian Fuentes. Dr. Fuentes ordered X-rays and prescribed physical therapy and pain medications. Dr. Fuentes prescribed medications including Norco, oxycodone, and methadone. Hanson took the medications for four years; prior to trial Dr. Fuentes put Hanson on Subutex to wean him off opiates. The X-rays revealed disk degeneration at L5-S1, the lower lumbosacral spine. Subsequently, Dr. Fuentes increased Hanson's pain medication and referred him to an orthopedic surgeon. Hanson never contacted any orthopedic doctor in the area.

Hanson's attorney referred Hanson to the SpineCare Medical Group in Daly City. Dr. Goldthwaite at the SpineCare Medical Group referred him to Dr. Hansen in Redding, who performed facet blocks, a radiofrequency ablation, and finally an epidural in May 2011.

After the epidural was administered, Hanson felt better and asked Dr. Fuentes to release him back to work. A week after he returned to work, Hanson bent over to pick up a rake and his "back popped out again." He never returned to work. In June 2013 defendant had spinal surgery, performed by Dr. Paul Slosar in San Francisco.

Seven weeks prior to trial, Hanson's attorney sent him to Dr. Jeffrey Grolig. Dr. Grolig testified Hanson tore a disk in the car accident, an injury that required surgery. Dr. Grolig reviewed a medical summary sent to him by Hanson's counsel, not Hanson's medical records. He did not review Hanson's MRI pictures or photos of the car accident.

**Hanson's Health History Pre- and Postaccident**

In 2006 Hanson injured his lower back while working as an in-home caregiver. Dr. Clayton Reinhardt treated Hanson, who complained of severe pain, a level 9.5 out of 10. Dr. Reinhardt found narrowing of the L5-S1 disk space and diagnosed Hanson as suffering from lumbar strain or sprain, muscle spasm, and intervertebral disk disorder at the L5-S1 disks. Dr. Reinhardt testified the disk disorder could be a source of future back discomfort.

3

Although Dr. Reinhardt advised Hanson to get an MRI in 2006, Hanson did not do so. Hanson was off work for six months and never returned to the caregiving job. On his last day of physical therapy, Hanson sneezed, causing his knee to "[go] out" and continuing numbness in his leg.

In 2008 Hanson was attacked while walking home from a casino. His assailant hit him with a stick or bat, resulting in hospitalization. Hanson suffered injuries to his face and head and complained of back pain. At trial, Hanson denied any injury to his lower back resulting from the attack and testified his back had not been injured in the three years prior to the 2010 accident. He was taking daily aspirin for aches and pains at the time of the 2010 accident.

After the accident, Hanson tripped a couple of times and experienced flare-ups of his back problem. He slipped on water at home and had to go to the emergency room. On one of these occasions he had to call an ambulance. Hanson also tripped over a flip-flop in August 2013, resulting in an emergency room visit and increased pain.

Hanson had smoked one to one-and-a-half packs of cigarettes a day for the past 35 years. Hanson's doctors testified that smoking contributed to his chronic pain and inflammation by producing a chronic inflammatory state. Smoking also contributes to loss of water in the disks and is a substantial contributor to degenerative disk disease.

In early 2012 Dr. Slosar told Hanson to quit smoking because of the impact on his health and in order to prepare for back surgery. All of Hanson's doctors advised him to quit smoking. In October 2013 Dr. Hansen told Hanson his prognosis was up to him and depended upon his taking action to improve his condition.

Hanson also suffers from diabetes and high blood pressure. When Dr. Grolig treated Hanson in March 2014 Hanson had a diabetic ulcer.

**Expert Testimony**

*Hanson's Experts*

Hanson offered testimony by Dean Tuft, Ph.D., an accident reconstruction analyst. Dr. Tuft performed calculations to determine if there would be enough force from the accident to cause Hanson's injury. He estimated Hanson's speed at three miles per hour; Hanson testified he was going two miles per hour. In developing his analysis, Dr. Tuft used a speed of 30 miles per hour for Martin's van. Prior to his death, Martin stated the van was traveling at 15 to 20 miles per hour. Dr. Tuft did not have this estimate when doing his calculations.

In addition, Dr. Tuft relied upon statements from Hanson's girlfriend and her son, taken four years after the accident, that Hanson's car rotated 80 to 90 degrees. Dr. Tuft stated it was up to the jury to determine the accuracy of the rotation degree estimates.

Dr. Tuft postulated a "delta-v" of 9.1 to 13.1 miles per hour for Hanson's vehicle.[1] Based on his calculations, if the van was traveling 20 miles per hour, the delta-v would be 9.1. If the van was traveling 30 miles per hour, the delta-v would be 13.1.

Dr. Jesse Wobrock testified for Hanson as a biomechanical expert, retained to determine whether Hanson's injuries were consistent with the circumstances surrounding the accident. He relied, in part, on Dr. Tuft's delta-v calculations for his opinion.

According to Dr. Wobrock, the normal delta-v necessary to cause injuries in a healthy individual is 10 miles per hour, a delta-v of 10. Using Dr. Tuft's calculation of a delta-v of 9.1 to 13.1, and Hanson's preexisting degenerative condition in his spine, Dr. Wobrock testified Hanson's spinal injuries were consistent with the accident. He testified he was not determining whether, in fact, Hanson suffered any injuries as a result of the accident, but only that the injuries he had were consistent with the accident forces

---

[1] "Delta-v" refers to the change in velocity of the vehicle upon impact. Delta-v provides a means for assessing damage and injuries.

5

based on Dr. Tuft's calculations.  If the delta-v were below 9.1 it would potentially change his analysis.

### Martin's Experts

Martin offered testimony by Robert Snook, an accident reconstructionist.  Snook, a 30-year California Highway Patrol employee, has significant experience with the Multidisciplinary Accident Investigation Team, performing accident reconstructions and investigations.

Snook's calculations estimated the delta-v of the accident to be between 0.8 and 1.1.  If Martin's van was traveling 30 miles per hour, then the delta-v would be 0.8; if the van was traveling 20 miles per hour, the delta-v would be 1.1. In making these calculations, Snook relied upon Hanson's statement, made nine days after the accident; his deposition testimony that his car was going 2 miles per hour; and Martin's statement that he was traveling 15 to 20 miles per hour.

Snook testified the photographs taken after the accident revealed no damage to Hanson's car other than the bumper fascia being pulled off.  Snook believed this was crucial because if Dr. Tuft's delta-v calculation was correct, it "physically . . . could not happen based on [the] photos" of the vehicles and the lack of damage.  Under Dr. Tuft's scenario, there would have been damage to the headlight and leading edge of the hood of Hanson's car.

Martin also offered testimony by Dr. Sean Shimada, a biomechanical engineering expert.  Dr. Shimada reviewed photos of the cars and the accident scene, the parties' responses to interrogatories, recorded statements, deposition testimony, trial testimony, and medical records.  He used the delta-v calculations postulated by Snook.

Dr. Shimada testified the likely accident force was 27 pounds, insufficient to cause injury.  A lumbar strain injury would require 155 to 188 pounds of force; ligament damage, 225 to 272 pounds of force; and a ligament tear would require 485 to 587

6

pounds of force to the low back. An acute disk injury would require more than 587 pounds of force.

**Verdict**

The court instructed with CACI No. 424: "William Hanson claims that he was harmed by George Martin's negligence. George Martin agrees that he was negligent, but denies that the negligence caused the full extent of the harm claimed by William Hanson.

"To establish his claim against George Martin, William Hanson must prove both of the following:

"1. That William Hanson was harmed; and

"2. That George Martin's negligence was a substantial factor in causing William Hanson's harm."

The court used the special verdict form proposed by Martin. The jury found: "Question No.1: Was the defendant George Martin negligent?

"Answer: Yes.

"Question No. 2: Was George Martin's negligence a substantial factor in causing harm to William Hanson?

"Answer: No."

The jury found in Martin's favor and did not address Hanson's damage claims.

**Motion for a New Trial**

Hanson filed a motion for a new trial. As on appeal, Hanson argued insufficient evidence supported the jury's verdict. Following a hearing, the trial court denied the motion. The trial court entered judgment on the special verdict in favor of Martin and awarded Martin costs and expert witness fees. Hanson filed a timely notice of appeal.

## DISCUSSION

## SUFFICIENCY OF THE EVIDENCE

Hanson challenges the sufficiency of the evidence in support of the jury's verdict. He contends Martin's counsel and experts conceded the accident caused his injuries.

7

**Standard of Review**

When a party challenges the trial court's factual finding on the ground there is no substantial evidence to support it, our power begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, that will support the finding. If we find such evidence, it is of no consequence that the trial court, believing other evidence or drawing other reasonable inferences, might have reached a contrary conclusion. (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

Substantial evidence is evidence of ponderable legal significance, evidence that is reasonable, credible, and of solid value. The ultimate determination is whether a reasonable trier of fact could have found evidence favorable to the judgment based on the whole record. Substantial evidence may consist of inferences, but inferences that are the result of speculation or conjecture cannot support a finding. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.)

### *Discussion*

Hanson contends that "all of the expert *medical* evidence in this case and defendant's judicial admissions establish that Mr. Hanson suffered at least *some* injury, although the nature and extent of that injury was heavily disputed." In effect, Hanson challenges the evidence to support the jury's finding that although Martin was negligent, his negligence was not a substantial factor in causing Hanson's injuries.

**Instructions on Causation**

The court instructed the jury on causation and substantial factor with CACI No. 430: "A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

"Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct." The court also instructed on multiple causes with CACI

8

No. 431: "A person's negligence may combine with another factor to cause harm. If you find that George Martin's negligence was a substantial factor in causing William Hanson's harm, then George Martin is responsible for the harm. George Martin cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing William Hanson's harm."

In addition, the court instructed with CACI No. 3927 on the aggravation of a preexisting condition or disability: "William Hanson is not entitled to damages for any physical or emotional condition that he had before George Martin's conduct occurred. However, if William Hanson had a physical or emotional condition that was made worse by George Martin's wrongful conduct, you must award damages that will reasonably and fairly compensate him for the effect on that condition." The court further instructed with CACI No. 3928 on an unusually susceptible plaintiff: "You must decide the full amount of money that will reasonably and fairly compensate William Hanson for all damages caused by the wrongful conduct of George Martin, even if William Hanson was more susceptible to injury than a normally healthy person would have been, and even if a normally healthy person would not have suffered similar injury."

According to Hanson, "anything that causes or contributes to an injury is a 'substantial factor,' and causation is established." Hanson misreads the law on causation.

Whether a defendant's conduct actually caused an injury is ordinarily a question of fact for the jury. Causation of fact is ultimately a matter of probability and common sense. The substantial factor standard is relatively broad, requiring only that the contribution of the individual cause be more than negligible or theoretical. Even a very minor force that causes harm is considered a cause in fact of the injury. However, a force that plays only an infinitesimal or theoretical part in bringing about the injury is not a substantial factor. (*Uriell v. Regents of University of California* (2015) 234 Cal.App.4th 735, 744.)

9

In denying the motion for a new trial, the trial court noted: "There was testimony that the collision impact was slight, and the jury reasonably could have reached the conclusion there was no injury to plaintiff resulting from the accident. The admission of liability was not an admission as to medical causation or medical injury, but only a statement that fault for the accident was not disputed." Substantial evidence supports both the jury's verdict and the trial court's gloss on that verdict.

Hanson disagrees and argues Martin's counsel made a judicial admission in closing argument that Hanson suffered some injury. However, as the court instructed the jury: "What the attorneys say during the trial is not evidence. In their opening statements and closing arguments, the attorneys talk to you about the law and the evidence. What the lawyers say may help you understand the law and the evidence, but their statements and arguments are not evidence. . . ." The court further instructed: "The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial."

Hanson points to statements by Martin's counsel that following the accident Hanson suffered from back strain. He argues these statements constitute admissions that the accident "caused at least some injury, thus establishing causation." However, as noted, "some injury" is not the standard for finding a defendant's negligence was a substantial factor in causing a plaintiff's injury. Moreover, the jury was instructed that counsel's statements were not evidence.

In addition, Hanson argues Martin's medical experts conceded that the accident caused injury. Hanson contends Martin's reliance on his accident reconstructionist and biomechanist "do not change these essential admissions of medical causation."

At trial, both Hanson and Martin presented testimony by experts as to whether the accident forces were sufficient to result in physical injury. Both parties also presented

10

testimony by experts as to what medical treatment Hanson received, both before and after the accident.

The court instructed the jury with CACI No. 219: "During the trial you heard testimony from expert witnesses. The law allows an expert to state opinions about matters in his or her field of expertise even if he or she has not witnessed any of the events involved in the trial.

"You do not have to accept an expert's opinion. As with any other witness, it is up to you to decide whether you believe the expert's testimony and choose to use it as a basis for your decision. You may believe all, part, or none of an expert's testimony. In deciding whether to believe an expert's testimony, you should consider:

"a. The expert's training and experience;

"b. The facts the expert relied on; and

"c. The reasons for the expert's opinion." The court also instructed with CACI No. 221: "If the expert witnesses disagreed with one another, you should weigh each opinion against the others. You should examine the reasons given for each opinion and the facts or other matters that each witness relied on. You may also compare the expert's qualifications."

In order to recover on his negligence claim, Hanson had to present evidence that the accident forces were sufficient to cause physical injury. Once Hanson established the accident caused the injury, he was required to present medical testimony that the injuries he was treated for were, in fact, caused by the accident.

Here, the expert testimony on the force involved in the accident did not convince the jury that the impact of the accident was strong enough to cause Hanson injury. The jury was free to find Martin's accident experts more convincing than those offered by Hanson. Martin's experts testified that based on the relative speeds of the vehicles and the photos of Hanson's vehicle after the accident, which showed almost no damage, there was insufficient force to cause Hanson injury. We defer to the jury, which was in the

11

best position to evaluate the evidence before it, and find sufficient evidence to support its verdict.

## MOTION FOR A NEW TRIAL

Hanson asserts the trial court erred in denying his motion for a new trial because the court failed to review the entire record. We disagree.

**Background**

Following a hearing, the court ruled: "1. Plaintiff's motion for new trial is denied. The court had a good recollection of [the] case. There was evidence and testimony that the forces of the accident were insufficient to cause injury. Based on the preponderance of the evidence in the case there was sufficient evidence for the jury to find there was no causation of injury and no liability for injury. Plaintiff has failed to show that the jury clearly should have reached a different verdict.

"2. Defendant's admission of liability was not an admission as to medical causation or medical injury, but only a statement that fault for the accident was not disputed.

"3. Defendant's objection to new evidence submitted on reply is sustained."

**Discussion**

The trial court possesses wide discretion in ruling on a motion for a new trial, and we give its determination great deference on appeal. We review all the rulings and proceedings involving the merits or affecting the judgment. In reviewing an order denying a new trial, we review the entire record so as to make an independent determination as to whether there is any prejudicial error. We possess no discretion to grant a new trial for harmless error. (*Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 693-694.)

On appeal, Hanson reiterates his belief that the trial court's conclusion that he was not "entitled to recover for those damages in which negligence was conceded and causation established by unanimous medical testimony is incomprehensible and contrary

12

to law, constituting an abuse of discretion per se." We have addressed Hanson's argument and found sufficient evidence supports the jury's finding in Martin's favor on the issue of causation.

Finally, Hanson contends it was error for the trial court to exclude excerpts from the record submitted in reply to the motion for a new trial. Hanson sought to introduce portions of the trial testimony of Drs. Shimada and Tuft. Martin objected to the exhibits on the ground the evidence was submitted for the first time in reply. The trial court sustained the objections.

The trial court stated it "had a good recollection of [the] case." During the hearing on the motion the court observed: "I remember this trial well. It was a low impact accident, did not seem to have the forces necessary to me as a trier of fact as an independent review. . . . [T]he preponderance of the evidence shows that the injury could have been caused and likely was caused by something unrelated to the accident." The court's decision not to separately consider the trial testimony of two experts, which was simply a repetition of what was presented at trial, does not amount to error.

## DISPOSITION

The judgment is affirmed. Martin shall recover costs on appeal.


                                                                       RAYE , P. J.


We concur:


BLEASE , J.


MAURO , J.

13