Filed 6/11/19; Certified for Publication 7/9/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KAREN HERNANDEZ et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>FIRST STUDENT, INC., et al.,<br><br>    Defendants and Respondents. | B281161<br><br>(Los Angeles County<br>Super. Ct. Nos. BC513802,<br>BC514509) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge. Affirmed.

    Carpenter, Zuckerman & Rowley, Nicholas Rowley; The Rowley Law Firm and Courtney Rowley for Plaintiff and Appellant Karen Hernandez.

Shegerian & Associates, Carney Shegerian, Anthony Nguyen; Doumanian & Associates and Nancy P. Doumanian for Plaintiff and Appellant Sergio Saravia.

Horvitz & Levy, Karen M. Bray, Scott P. Dixler; Wesierski & Zurek, Thomas G. Wianecki and David M. Ferrante for Defendants and Respondents.

———————————

This appeal arises from a wrongful death action brought by Karen Hernandez and Sergio Saravia (appellants), the parents of 13-year-old Jonathan Hernandez, after Jonathan was struck and killed by a school bus while riding his bicycle in Glendale. The school bus was owned by defendant and respondent First Student, Inc., and driven by defendant and respondent Barbara Calderon. The jury found Jonathan 80 percent liable for the accident, and awarded $250,000 in damages. Jonathan's parents filed a lengthy and detailed motion for a new trial on the grounds of juror misconduct, erroneous evidentiary and instructional rulings and attorney misconduct. The trial court issued a 25-page ruling denying the motion. This appeal followed.

Appellants make numerous claims of error in their voluminous opening brief, but they have forfeited almost all those claims. Appellants' primary claim is that the trial court erred in denying their motion for a new trial. While it is the duty of the appellate court in reviewing the denial of a new trial motion to review the entire record, it is the appellants' duty to make a cognizable argument on appeal as to why the trial court abused its discretion in denying the motion and to support their arguments with accurate and relevant record citations. Appellants have not done so.

Assuming for the sake of argument that appellants intended to raise the claims of error directly on appeal, we would find almost all those claims forfeited as well, for similar reasons. We consider only the following claims: (1) the trial court abused its discretion in admitting evidence in the damages phase of Hernandez's use of crystal methamphetamine; (2) the trial court abused its discretion in permitting retired police officer Charles Smith to testify as an expert; (3) the trial court erred prejudicially in limiting appellants to showing 10 photographs of Jonathan to the jury; (4) the court erred in giving the jury special instructions on the lawful operation of a bicycle in Glendale; (5) defense counsel made a prejudicial personal attack on appellants' trial counsel by referring to her as a card shark; (6) defense counsel violated the trial court's in limine rulings precluding evidence about Hernandez's immigration status and a witness's cancer treatment; and (7) defense counsel permitted Calderon to commit perjury. We find no merit to these claims. We affirm the judgment.

BACKGROUND

It was essentially undisputed at trial that Jonathan was riding his bicycle on the sidewalk, and that he was hit by the bus when he rode his bicycle into the street without stopping. The accident occurred at the intersection of Columbus Avenue and Riverdale Drive in Glendale. The intersection is a roundabout or rotary: there is a raised circle in its center. All four approaches to the intersection have stop signs.

About 2:00 p.m. on May 2, 2013, when the accident occurred, Calderon had dropped off her last student and was returning to the First Student lot. Michael Kennedy, an aide who helped with the special needs students who rode the bus, was still

3

on board.  Calderon stopped before proceeding into the intersection.  As she proceeded, she heard and felt her vehicle collide with something.  Calderon pushed on the brakes but took her hands off the steering wheel.

Kennedy ran to the front of the bus and put the bus, which had not yet stopped, into park.  Thus, the bus travelled some distance after hitting Jonathan.

Police soon arrived at the scene.  Calderon spoke with them.  Among other things, she told police that she had seen Jonathan riding his bicycle on the sidewalk, but did not see him in the street before she hit him.

Officer Duncan believed Calderon was impaired, and requested Calderon be evaluated.  Calderon was taken to the hospital.  Certified Drug Recognition Expert Marc Tarzia arrived at the hospital about 3:28 p.m.  He performed a series of assessment tests on Calderon, such as requesting her to stand on one leg.  She failed all the tests.

An emergency room doctor examined Calderon and concluded she was not impaired.

The hospital took a blood sample. The initial blood screen tested positive for the presence of benzodiazepines.  The final test results showed that Calderon had tramadol, alprazolam, oxazepam and temazepam in her system.  These are all prescription medications.

Based on his field sobriety test and the blood test result, Detective Tarzia concluded that Calderon was impaired by the medications she was taking.  Tarzia acknowledged that some of Calderon's difficulties with the sobriety tests may have been due to Calderon's obesity and knee problems; he still concluded she was impaired by her medications.

Police searched Calderon's home the night of the accident because she could not remember what medications she was taking. As the investigation into Jonathan's death and discovery in this civil action revealed, Calderon took more prescription medications than the ones identified by the blood test. She did not take them as prescribed.

For reasons that were disputed at trial, Calderon was sleepy throughout the day of May 2. She returned home after her first trip of the day about 8:30 a.m. and took a nap before returning to work around noon. The morning nap was a habit of hers. Calderon admitted to police that her medications could make her groggy.

Jonathan's mother and father, who were estranged from each other, brought this wrongful death action against First Student and Calderon. Trial of this matter was bifurcated.

During the liability phase, the parties presented conflicting evidence and experts about whether Calderon was impaired at the time of the accident. The parties also presented conflicting evidence concerning whether Calderon could have avoided hitting Jonathan, including the testimony of accident reconstruction experts.

The jury found both Jonathan and Calderon negligent and found that their negligence was a substantial factor in causing Jonathan's death.

In the damages phase of the trial, the jury learned that Jonathan's father had a limited relationship with him. Saravia lived with Jonathan for only the first two years of the boy's life. He moved to Washington state when Jonathan was six years old. Thereafter he saw Jonathon about twice a year. He spoke with

5

Jonathan about once a week in the six months before Jonathan's death.

The jury also learned Hernandez had been incarcerated six times during Jonathan's life. Hernandez acknowledged she has used crystal methamphetamine since Jonathan was about a year old; she maintained she did not consume the drugs in Jonathan's presence. There was evidence Hernandez's drug use affected her behavior when she was in Jonathan's presence.

The jury awarded Jonathan's parents $250,000 in damages. This amount was adjusted to reflect Jonathan's comparative fault.

Jonathan's parents moved for a new trial, which was denied. This appeal followed.

DISCUSSION

## I. New Trial Motion

Appellants' brought a motion for a new trial based on (1) jury misconduct and gross irregularities in jury proceedings; (2) misconduct by defense counsel; and (3) erroneous orders of the court concerning evidence and instructions which prevented appellants from having a fair trial. The trial court denied this motion.

Appellants have organized the argument in their opening brief around these three areas, and mention that their claims of juror and attorney misconduct and errors in the trial court's evidentiary and instructional rulings are grounds for granting a new trial. They set forth various standards of review related to the denial of a new trial motion. They do not, however, cite to or quote the trial court's written ruling on their motion or explain why the trial court abused its discretion in making those rulings. They do not cite to their memorandum of points and authorities

6

in support of their new trial motion.  They frequently provide no record or legal citations to support their claims of error.

"While it is the duty of the appellate court in reviewing the denial of a new trial motion to review the entire record, on appeal it is manifestly 'the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing *exact page citations*.  [Citations.]' [Citations.]" (*Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 694, fn 1.)  A party's inaccurate or missing record citations "frustrates this court's ability to evaluate *which facts* a party believes support his position." (*Ibid*.)

Further, an appellant has a duty to make a "cognizable argument on appeal as to why the trial court abused its discretion in denying the motions." (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.)  Mere repetition of the arguments made in support of the motion in the trial court is not sufficient. (*Ibid*.)  " '[A]n appealed judgment is presumed correct, and appellant bears the burden of overcoming the presumption of correctness.' [Citation.]  As a result, on appeal 'the party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised.  [Citation.]' [Citations.]  When an appellant raises an issue 'but fails to support it with reasoned argument and citations to authority, we treat the point as waived.  [Citations.]' [Citation.]" (*Ibid*.)  By failing to provide adequate record citations or make any cognizable claims of error concerning the new trial motion, appellants have waived any challenge to the denial of their motion for a new trial.  (*Ibid*.)

7

Assuming for the sake of argument that appellants intended to raise the claims of error directly on appeal, we would find almost all those claims forfeited as well, for similar reasons.

"[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) "We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise." (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them."].) We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam, supra,* at p. 287.)

Finally, "[w]e will not ordinarily consider issues raised for the first time in a reply brief. [Citation.] An issue is new if it does more than elaborate on issues raised in the opening brief or rebut arguments made by the respondent in respondent's brief. Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue. [Citation.]" (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275–276.)

II. Juror Misconduct

A trial court undertakes a three-step process to evaluate a motion for new trial based on juror misconduct. (*Barboni v.*

*Tuomi* (2012) 210 Cal.App.4th 340, 345.) The trial court must first determine whether the declarations supporting the motion are admissible under Evidence Code section 1150. Second, if all or part of the declarations are admissible, the trial court determines whether the facts establish misconduct. If the trial court finds misconduct occurred the trial court then determines whether the misconduct was prejudicial. (*Barboni*, at p. 345.)

On review from a trial court's denial of a new trial motion based on juror misconduct on the ground no misconduct occurred, " ' "[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." ' " (*Barboni v. Tuomi, supra,* 210 Cal.App.4th at p. 345.)

While appellants provide record citations to the conduct or statements which they contend constitute juror misconduct, they ignore both the requirement that those declarations be admissible and the trial court's ruling sustaining objections to significant portions of the juror declarations offered by appellants. They also ignore the trial court's rulings on juror credibility, and this court's obligation to defer to such credibility findings when support by substantial evidence.[1] Finally, they

---

[1] For example, appellants contend Juror Rogers intentionally concealed during voir dire the fact that he was involved in a (second) work related traffic accident. Juror Rogers later brought his omission to the court's attention. The trial court conducted an inquiry during trial and determined Juror Rogers was credible when he stated that the reason he did not mention a traffic accident during voir dire was that he forgot about the accident until he received a text from his supervisor during trial. Appellants in no way address the court's credibility determination or explain why it lacked substantial evidence.

ignore the trial court's rulings applying the law to the facts as found by the jury. Accordingly, they have forfeited their claim the trial court erred in denying the new trial motion on the ground of juror misconduct.

To the extent appellants are attempting to raise their claims of juror misconduct directly on appeal, those claims would suffer from the same inadequacies. Juror misconduct claims, however raised, are almost invariably dependent on the admissibility of juror declarations under Evidence Code section 1150 and the trial court's credibility determinations. The claims are forfeited.

III. Evidentiary Rulings

Appellants identify 12 "flawed evidentiary rulings" by the trial court which they contend prevented a fair trial and resulted in a miscarriage of justice. We consider the evidentiary issues related to appellants' claim of instructional error separately, in section IV below. Appellants have forfeited eight of the remaining 11 claims.

A. Appellants Have Forfeited Their Claim That The Trial Court Erred In Delaying Its Rulings On Bifurcation And The Admissibility Of Hernandez's Drug Use

Appellants contend the trial court erred in deferring its ruling on bifurcation of liability and damages until after voir dire was completed and its ruling on the admissibility of Hernandez's drug use until shortly before the damages phase of the trial. Appellants have not cited any legal authority to show the trial court was required to decide such issues earlier and have not provided any record citations to show that they were unaware the court intended to delay the rulings. Appellants assert they were prejudiced by the delay, do not explain the nature of the prejudice

10

which arose from the *timing* of the court's decision. They have forfeited these claims.

To the extent appellants are attempting to insert a claim that the trial court erred in admitting domestic violence and incarceration evidence related to Hernandez in the liability phase of the trial, that claim is forfeited by appellants' failure to provide record or legal citations or develop supporting legal authority and by their failure to include this claim in the heading of their brief. (See *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading."].)

B. Appellants Have Forfeited Their Claims That The Trial Court Erred In Not Allowing Them To Call Calderon In Their Case-In-Chief Or In Rebuttal

Appellants contend the trial court erred in refusing to allow them to call bus driver Calderon live in their case-in-chief or in rebuttal and then telling the jury that appellant Saravia had chosen not to call her as a live witness. Appellants contend the trial court also erred in refusing to allow them to play police audio recordings of Calderon to impeach her.

Appellants do not provide a single citation to the record or legal authority to support their claims. They have forfeited these claims.

C. Appellants Have Forfeited Their Claims That The Trial Court Erred In Limiting Discovery And Trial Testimony Concerning Calderon's Medical And Prescription Drug History

Appellants' claim of error here is two-fold: (1) the trial court should not have limited discovery of Calderon's medical history to 30 days prior to the accident and her prescription

11

history to 90 days before the accident; and (2) the trial court erred in permitting defense counsel to argue that Calderon had " 'years and years of safe driving' " while taking her medications, and so she was not impaired by the medication.  Appellants assert this information was false and was based on medical records which the court had ordered be returned to the medical provider.

Appellants offer no argument or legal authority to support their claim that the trial court abused its discretion in limiting the scope of medical discovery.  The relevant inquiry was Calderon's condition and medication usage at the time of the accident.  While some limited history was needed to give context to those facts, appellants do not explain how medical information from a year before the accident would have had the potential to help their case.  This claim is forfeited.

To the extent appellants are attempting to insert a claim that defense counsel violated the trial court's in limine order by claiming in closing argument that Calderon had been taking medication "for 'years and years' " and/or committed misconduct by making that argument without evidentiary support, appellants have forfeited those claims by failing to identify them in their heading, which asserts only that the trial court erred in limiting discovery and evidence concerning Calderon's medical and prescription history.  (See *Pizarro v. Reynoso, supra,* 10 Cal.App.5th at p. 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading."].)

In light of appellants' repetition of this claim in their misconduct arguments, we will exercise our discretion to consider it here in a more helpful context.

12

First, appellants have forfeited the claim that the argument lacks evidentiary support by failing to object to the argument in the trial court. This is a separate and distinct argument from their assertion respondents violated an in limine order by mentioning Calderon's medical and/or prescription history outside the temporal restrictions imposed by the court.

Second, appellants have forfeited their claim that the argument violates the court's in limine ruling by failing to provide record citations to support their claims and by failing to object in the trial court.

A pretrial motion in limine may eliminate the need for a subsequent objection, but this is not an invariable rule. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1174 [in limine ruling is necessarily tentative because trial court retains discretion to make a different ruling as the evidence unfolds]; see also *Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 608 [noting that events at trial may change the context of the ruling and require a renewed objection].)

Here, appellants' arguments suggest there was some change in the evidentiary context as trial unfolded. Appellants mention arguing that defense counsel " 'opened the door' " on the subject of Calderon's medical history, a position the court rejected. If appellants had objected to closing argument on the ground it violated the court's in limine ruling, and if the court agreed, defense counsel' argument could have been stricken. If the trial court did not agree that the argument violated its ruling in light of developments at trial, this would have been clarified for the record. They did not make a renewed objection and so have forfeited this claim.

13

D.  Appellants Have Forfeited Their Claim The Trial Court Erred In Allowing Hearsay News Reports

Appellants contend the trial court erred in allowing the defense to read portions of the transcript of news footage of eyewitness Amanda Arista, which they contend was hearsay. Appellants do not provide cites to the pages of the reporter's transcript where this reading took place or show that the portions used fell outside their stipulation that some portions of the interview could be played in front of the jury.[2]  Further, appellants have provided no legal authority beyond a bare citation to Evidence Code section 352.  Not every out-of-court statement is inadmissible hearsay.  Appellants have forfeited their claim.

E.  Appellants Have Forfeited Their Claim That The Trial Court Erred In Not Compelling The Defense To Produce Stephen Zieder

Appellants contend the trial court erred in not compelling defendants to produce Stephen Zieder, a former employee of First Student.  They complain attorney Ferrante represented Zieder at his deposition and agreed to make him available at trial.[3]  They

---

[2]  Appellants also contend respondents did not "identify" the news footage in discovery or before trial; respondents reply they provided appellants with the full video clip.  This factual dispute should have been raised and resolved in the trial court. Appellants provide no record citation for such a claim and resolution, yet another reason appellants have forfeited this claim.

[3]  We note in the interval between the deposition and trial Zieder retired and was no longer a client of Ferrante.

14

contend "[t]o avoid trial delays Appellants were unable to call this witness."

The record shows Zieder appeared at the courthouse on November 21 in response to a subpoena from appellants. Appellants' trial counsel announced she would not call Zieder "right now" but acknowledged the court had ordered him to remain under subpoena in case he was needed. Appellants point to nothing in the record showing this date was "too late" to use Zieder as a witness or that they tried but were unable to recall Zieder at a later date. Accordingly, appellants have forfeited this claim.

F. Appellants Have Forfeited Their Claim That The Trial Court Erred In Allowing The Defense To Play Videotape Excerpts Of Hernandez's And Rios's Depositions

Appellants contend the trial court erred in allowing the defense to play video clips from the depositions of Saravia, Hernandez, and Hernandez's ex-boyfriend Rios about Jonathan's training in riding a bicycle. They contend the court had previously ruled the evidence was irrelevant to liability, the mother and Rios "came across as undesirable gang members," and the mother's deposition was taken in prison.

Appellants have not provided any record citations to support this claims, cited any legal authority or developed any legal argument to support their claims of error. They have forfeited this claim.

G. The Trial Court Did Not Abuse Its Discretion In Permitting Evidence Of Hernandez's Drug Abuse During The Damages Phase

Appellants contend evidence of Hernandez's use of crystal meth had little evidentiary value, but enormous potential to

15

create an emotional bias among the jury members and so the trial court abused its discretion in failing to exclude the evidence under Evidence Code section 352.

We agree Hernandez's use of crystal meth had potential to be prejudicial, but it was also quite relevant to her wrongful death damages claim. Factors such as the closeness of a family unit, the depth of their love and affections, and the nature of the personal relationship between decedent and the survivors are proper considerations for a jury assessing noneconomic damages. (See, e.g., *Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 201; *Benwell v. Dean* (1967) 249 Cal.App.2d 345, 349.)

While a survivor's drug use or abuse may not be a factor in every case, it was here. Although Hernandez testified that she never used crystal meth in Jonathan's presence, she acknowledged she remained under its influence for days, and was under its influence while parenting Jonathan. The drug sometimes cause her to stay awake for 72 hours straight. Hernandez acknowledged the drug could make her "aggressive" and she was imprisoned for assaulting Rios in Jonathan's presence with a pair of scissors and for making physical threats.

Appellants are correct the evidence showed Hernandez's parental rights were never terminated and Jonathan was a successful student. This favorable evidence was relevant, but it does not preclude the jury from hearing unfavorable evidence as well. It is a jury's task to weigh all the evidence and make a decision, in this case on the amount of damages.

Appellants' reliance on *Hernandez v. County of Los Angeles* (2014) 226 Cal.App.4th 1599 and *Winfred D. v. Michelin North America, Inc.* (2008) 165 Cal.App.4th 1011 to show prejudicial

error is misplaced.  In both cases the trial court admitted evidence with substantial potential for undue prejudice but no probative value at all.  In *Hernandez*, the trial court erred in admitting evidence of marijuana use because "the experts could not identify any manner in which marijuana use contributed to the accident that injured Randy or his decision to exit the Land Rover, [and so] the evidence was not relevant to the issues and had no probative value." (*Hernandez, supra,* at p. 1615.)  In *Winfred*, the trial court erred in admitting evidence of the plaintiff's extramarital affairs because it had no bearing on plaintiff's personal injury lawsuit against the manufacturer of an allegedly defective product.  (*Winfred, supra*, at p. 1038.)  As we have explained, Hernandez's drug use was relevant to damages here.

As for the potential prejudicial effect of the evidence, the trial court instructed the jury that the evidence of Hernandez's drug use was admitted for the limited purpose of "determining the quality of her relationship with Jonathan Hernandez with respect to damages.  You are not to consider it for any other purpose."  We presume the jury followed this instruction. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803-804.)  The trial court did not abuse its discretion in admitting the drug use evidence.

H.  Appellants Have Forfeited Their Claims That The Trial Court Erred In Not Allowing them to Impeach Calderon With Recordings Of Her Statements To Police

Appellants contend the trial court erred in not allowing playback of portions of police audio recordings of Calderon's statements to police.  Appellants' counsel appears to have agreed with this ruling in the trial court.  In addition, appellants provide

17

no record citations or legal authorities and do not make any legal argument.  Appellants have forfeited this claim.

I.  The Trial Court Did Not Abuse Its Discretion In Permitting Retired Police Officer Charles Smith To Testify As An Expert Witness

Appellants contend the trial court erred in allowing defense witness Charles Smith to testify as an expert on whether Calderon was impaired, medication management, and medication side effects -- "a host of topics about which he had no foundation or knowledge."  They complain Smith did not have a college degree or medical training and had never been certified as a drug recognition expert.  We see no error in the trial court's decision.

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."  (Evid. Code, § 720, subd. (a).)

"The trial court's determination of whether a witness qualifies as an expert is a matter of discretion and will not be disturbed absent a showing of manifest abuse.  [Citation.] ' "Where a witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of the degree of his knowledge goes more to the weight of the evidence than its admissibility." ' [Citation.]"  (*People v. Bolin* (1998) 18 Cal.4th 297, 321–322.)  " '[N]o hard and fast rule can be laid down which would be applicable in every circumstances.' " (*Mann v, Cracchiolo* (1985) 38 Cal.3d 18, 38 overruled on other grounds by *Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 543.)

Smith had 25 years of experience and extensive training as a former police officer in Florida.  He was certified and recertified

18

multiple times throughout his career in standard field sobriety tests and the drug recognition program. Smith worked for several years on a multiple agency DUI task force. He taught the standard field sobriety test, breath test, and DRE program at the Dade County Police Academy. Although Smith was not certified in California, he testified there were national standards for field sobriety tests and he applied those standards in his opinion testimony in this case.

Smith was clearly qualified to opine about Detective Tarzia's DRE evaluation and why he formed the opinion that Calderon was not impaired. Smith's testimony about drugs was limited: he testified about how long impairing drugs had an effect after they were ingested and whether tests showing the presence of drugs in a person's system always indicated impairment. These topics were well within his area of expertise.

### J. The Trial Court Did Not Err In Limiting To 10 The Number Of Photographs Of Jonathan Appellants Could Admit Into Evidence.

Appellants contend the trial court erred in limiting appellants to 10 photographs of Jonathan during the damages phase of the trial. While this could be considered a small number of photographs, appellants do not provide any legal authority showing this number is unreasonably small. They speculate the small number of photographs encouraged the jury to believe Hernandez did not take very many photographs of Jonathan and was therefore an unfit mother who did not care about her child. Appellants point to nothing in the record to support such a reaction by jurors. Their claim fails.

K.  Appellants Have Forfeited Their Claim The Trial Court Erred In Permitting Detective Tarzia To Be Impeached With "Rolling Logs"

Appellants make a one sentence claim that the trial court erred in allowing Detective Tarzia to be impeached by " 'Rolling Log' " which merely house statistical information on DUI arrests. Appellants have forfeited this claim by failing to develop an argument on this point, cite any legal authorities, or explain how they were prejudiced by this ruling.

IV.  Instructional Error

Appellants contend the trial court erred in giving the jury special instructions 1 through 5 about the proper operation of a bicycle.  Appellants argument focuses on Instruction No.4, which states:

> "*Glendale Municipal Code,* Section 10.64.025 'No person shall ride or operate a bicycle upon any public sidewalk in any business district within the city . . .'

> "*California Vehicle Code* Section 235 states:  A 'business district' is that portion of a highway and the property contiguous thereto (a) upon one side of which highway, for a distance of 600 feet, 50 percent or more of the contiguous property fronting thereon is occupied by buildings in use for business, or (b) upon both sides of which highway, collectively, for a distance of 300 feet, 50 percent or more of the contiguous property fronting thereon is so occupied.'

> "In determining whether a highway is within a business district under *California Vehicle Code* 235, all churches,

20

apartments, hotels, multiple dwelling houses, clubs, and public buildings, other than schools, shall be deemed to be business structures.

"If a cyclist is prohibited from riding on the sidewalk he must ride on a roadway in the direction of traffic and must use the bike lane if one is provided."

Appellants contend the applicability of the instruction was disputed, it contained ambiguous terms, and respondents did not offer any expert testimony on zoning or the meaning of "business district."

We see no ambiguity in the instruction, although the excerpt from Vehicle Code section 235 requires a careful reading. Respondents offered the testimony of Officer Fernandez that more than 70 percent of the buildings in the area abutting the accident intersection were apartment buildings and multi-unit residences which extended more than 600 feet from the intersection. This is ample evidence to support the instruction. There was no need for a zoning expert. The trial court did not err in giving this instruction.

V. Attorney Misconduct

"A party ordinarily cannot complain on appeal of attorney misconduct at trial unless the party timely objected to the misconduct and requested that the jury be admonished. [Citation.] The purpose of these requirements is to allow the trial court an opportunity to remedy the misconduct and avoid the necessity of a retrial; a timely objection may prevent further misconduct, and an admonition to the jury to disregard the offending matter may eliminate the potential prejudice.

21

[Citations.] The failure to timely object and request an admonition waives a claim of error unless the misconduct was so prejudicial that it could not be cured by an admonition [citations], an objection or request for admonition would have been futile [citation] or the court promptly overruled an objection and the objecting party had no opportunity to request an admonition [citation]. Attorney misconduct is incurable only in extreme cases. [Citations.]" (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1411–1412.)

Attorney misconduct can justify a new trial only if it is reasonably probable that the party moving for a new trial would have obtained a more favorable result absent the misconduct. (*Cassim v. Allstate Ins. Co., supra*, 33 Cal.4th at pp. 801-802.)

### A. Appellants Have Forfeited Their Claim Defense Counsel Committed Misconduct During Opening Statement

Appellants contend defense counsel committed misconduct when he made remarks in opening statements concerning the training, screening and supervision of Calderon. Appellants claim defense counsel knew such statements could not be proven at trial because appellants had dismissed their negligent hiring, training and supervision claims before trial.[4]

Appellants neither objected to these statements nor requested the jury be admonished; they have forfeited the claim. (*Rayii v. Gatica, supra,* 218 Cal.App.4th at pp. 1411–1412.) Although appellants contend generally all their attorney

---

[4]     We note appellants also make a passing reference in this section to defense counsel "repeatedly" commenting on Calderon's " 'years and years of taking medication' " in violation of the court's ruling. We considered this claim in section III.C, *ante*, and found it to be forfeited.

misconduct claims fall under some exception to the forfeiture rule, they do not apply the general rule to the specifics of this claim. Accordingly, the claim is forfeited

Even if the claim were not forfeited for this reason, it would be forfeited due to appellants' failure to provide adequate record citations to support their claims. They provide only one record citation; the cited pages support only some of appellants' assertions about defense counsel statements. Relying on the summary provided by appellants in their opening brief, evidence of training and supervision are not the sort of topics which arouse the passions and prejudices of a jury. A timely objection would have limited the remarks and an admonishment would have cured any harm.

Appellants raise a similar claim of error in "discussing" bus driver training in another section of their opening brief entitled "G. Misconduct by defense counsel in discussing bus driver training when such a claim was not at issue." Appellants provide different statements about training in this section. Judging by the tense of those statements, they were made in closing argument. They fail to provide specific record cites for the statements or even to indicate generally when such statements were made. Appellants have forfeited any claim of misconduct based on these statements.

B. Appellants Have Forfeited Three Of Their Four Claims That Defense Counsel Personally Attacked Appellants' Trial Counsel; They Have Not Shown Prejudice In The Fourth Claim

Appellants contend defense counsel Wianecki's personal attacks on appellants' trial counsel Rowley consisted of both statements and non-verbal conduct.

Appellants first claim defense counsel disparaged Rowley, "throughout trial by rolling his eyes when counsel spoke, by making speaking objections, by making aggressive prefatory comments that were not legal objections when counsel was examining a witness, and by filing unorthodox in limine motions personally attacking Mr. Rowley and impugning his integrity and skill in the presence of a trial judge with which he was unfamiliar" Appellants have not provided any record citations to support these claims and so they are forfeited.

Appellants next identify three specific instances where they claim personal attacks occurred. They can be summarized as the lottery, circus, and card shark remarks. Appellants' objected to only one such instance, which involves the "card shark" remarks.

The full statement is "You know, Plaintiff's tactics in this case have been entirely theatrical and these theatrical tactics need to be called and recognized for what they are. We are being played. The attempt is being made that we are being played like pawns in a chess game. This is a gigantic game, much the way you would have a card shark at the poker table." Appellants' trial counsel Rowley objected that the remarks were "impugning the integrity of an officer of the court." The trial court admonished counsel not to personalize the argument.

Even assuming this remark amounts to a personal attack, it is not likely to inspire strong emotions in a listener or prejudice the jury against appellants' trial counsel or appellants themselves. Appellants contend the fact that the jury returned the amount of damages suggested by defense counsel establishes prejudice. It does not. This was a lengthy trial with many contested issues.

Appellants did not object to the lottery and circus remarks and so have forfeited the claims. Appellants contend generally they were not required to object to the misconduct because no admonition could cure the prejudice generated by the remarks.

We do not find the lottery and circus remarks so prejudicial they could not have been cured by an admonition. Neither were direct attacks on appellants' trial counsel. In context, the lottery reference was tied to a reminder that damages must be based on appellants' relationship with their son, referring to the measure of damages, not anyone's character. The circus remark was coupled with a unicorn reference and in context was primarily a colorful way of saying appellants' assessment of their relationship with their son was not realistic.

Appellants' claim that defense counsel displayed improper PowerPoint images is not supported by their record citations. That claim is forfeited for that reason as well. Given this second forfeiture, we are unable to consider whether an admonition could have cured any harm.

C.  Defense Counsel Did Not Violate The Motions In Limine Concerning Hernandez's Immigration Status Or A Witness's Cancer

Appellants contend defense counsel committed misconduct by deliberately violating two of the court's in limine motions, both precluding references to Hernandez's immigration status and to bus attendant Michael Kennedy's cancer treatment. Appellants contend specifically: (1) defense counsel asked Hernandez questions "intended to elicit her testimony that she was on an immigration hold"; and (2) defense counsel failed to tell Kennedy not to discuss his health and Kennedy later "blurted out" this information.

25

Defense counsel asked Hernandez if she had "just been released" in December. We see no misconduct in asking this straightforward question, which was part of a series of questions concerning Hernandez's relationship with her children. Hernandez replied that she was released in May, but picked up by immigration and held for six months. Hernandez could have simply answered no, or stated that she was released from "CIW" in May.

As for Kennedy's cancer, appellants' counsel asked the trial court to exclude the evidence. The trial court agreed and asked appellants' counsel to tell Kennedy of the ruling. Counsel agreed to do so. Thus, if any blame attaches to Kennedy's volunteered statement, it would attach to appellants' counsel, not defense counsel.

D. Appellants Have Forfeited Their Claim Defense Counsel Argued Matters Not In Evidence

Appellants contend defense counsel argued matters not in evidence and unsupported by the evidence in closing argument in the liability phase. Appellants have provided a record citation for only one instance of such conduct. They did not object and request an admonition and so have forfeited this claim. To the extent they contend an objection would have been ineffective, we do not agree.

The complained argument is: "You know, there's only one witness who actually measured whether or not Barbara Calderon was impaired by those drugs. Those medications that she was taking. We acknowledge that they were in her system. Of course they were in her system. But the issue was, was she impaired. And only Dr. Clardy measured individually, as well as collectively, what those concentrations were. Dr. Mcintyre didn't

26

do that work. The toxicologist from the hospital didn't do that. Dr. Ohanian didn't do that." This is only part of defense counsel's description of Dr. Clardy's testimony. We question whether a reasonable jury would have understood the quoted comments as asserting that Dr. Clardy actually tested Calderon's blood and determined the levels of drug concentrations in that blood. Defense counsel's argument describes Dr. Clardy as calculating the drug levels based on the half-life of the drugs.

Regardless of how this argument is understood, statements related to Dr. Clardy's measurement of drug concentration levels is not the sort of topic which arouses the passions and prejudices of a jury. A timely objection and admonishment cured any possible harm.

E. There Is No Evidence Defense Counsel Suborned Perjury.

Appellants contend defense counsel engaged in misconduct by allowing their client Calderon to deceive the jury about whether she spoke with police at the scene of the accident.

An attorney has a duty to attempt to dissuade a client from committing perjury. (*People v. Johnson* (1998) 62 Cal.App.4th 608, 621.) Further, if an attorney "knowingly present[s] lies to a jury," he may not "then sit idly by while opposing counsel struggles to contain this pollution of the trial." (*U.S. v. LaPage* (9th Cir. 2000) 231 F.3d 488, 492.)

Calderon denied speaking to police in response to a question on cross-examination by appellants' counsel. Counsel immediately followed up, asking "to be clear, at the scene . . . you never spoke to the police . . . is that your testimony?" Calderon replied, "I do not remember."

27

Appellants point to no evidence which would support an inference that defense counsel knew Calderon would testify she did not speak with police.  Calderon's next answer suggests she herself did not mean to make such a claim.  Further, soon after this testimony, defense counsel stipulated Calderon gave a statement to police at the scene of the accident.

DISPOSITION

The judgment is affirmed.  Respondents to recover their costs on appeal.


STRATTON, J.


We concur:



BIGELOW, P. J.



GRIMES, J.

28

Filed 7/9/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KAREN HERNANDEZ et al., | B281161 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC513802, BC514509) |
| v. | |
| FIRST STUDENT, INC., et al., | ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

The opinion in the above-entitled matter filed on June 11, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the Judgment.]

_____

BIGELOW, P. J.          GRIMES, J.          STRATTON, J.