Filed 7/8/24  Miller v. Universal Music Publishing CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CARL L. MILLER, | B325945 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20SMCV01886) |
| v. | |
| UNIVERSAL MUSIC PUBLISHING Inc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Carl L. Miller, in pro. per., for Plaintiff and Appellant.

Ballard Spahr, Robert S. Gutierrez and Elizabeth Schilken for Defendant and Respondent.

——————————————

Carl L. Miller filed suit against Universal Music Publishing, Inc. (UMP), sued as Universal Music Publishing Group (UMPG),[1] asserting breach of contract and related claims based on Miller's alleged ownership interests in various music recordings. In Miller's operative fourth amended complaint, he alleged his unnamed agent negotiated an agreement in which "UMPG Defendant Doe" agreed to acquire his company's assets, credit his contribution or ownership interest in existing recordings, and made other promises. Miller also alleged he needed discovery to identify the other parties to the contract. UMP filed a demurrer, which Miller did not oppose. Rather, Miller asked for additional time to conduct discovery and, following the discovery period, leave to file a fifth amended complaint. The trial court sustained UMP's demurrer without leave to amend and imposed sanctions against Miller for filing a frivolous ex parte application. We find no reversible error and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2020, Miller filed his original complaint in this action against UMPG. In January 2021, UMP removed the action to federal court. In May 2021, Miller filed a first amended complaint in federal court that omitted all federal claims. In July 2021, the federal court remanded the case to state court.

In August 2021, Miller filed an "amended amended complaint (1st)" against UMPG, which was different from the first amended complaint he filed in federal court. At a September 2021 status conference, the trial court granted Miller's request

---

[1]    According to UMP, it was erroneously sued under several different names, including Universal Music Publishing and UMPG.

for leave to file another amended complaint. Miller filed a 500-page complaint titled "amended amended complaint (2nd)." The named defendants were UMPG and Jody "Garson," who was identified in the complaint as UMPG's CEO. The complaint asserted breach of contract and related claims.

In November 2021, UMP filed a demurrer. In May 2022, the trial court sustained the demurrer and granted Miller leave to file a third amended complaint by June 7, 2022. In sustaining the demurrer, the trial court reasoned that the contract was alleged to be both written and oral, the complaint failed to allege the contract's relevant terms, and it was not clear what alleged promises were broken.

When Miller failed to timely file a third amended complaint, UMP filed an ex parte application for an order dismissing the action with prejudice. On June 20, 2022, the day before the scheduled hearing on UMP's ex parte application, Miller filed an untimely third amended complaint. He concurrently filed an Amendment to Complaint (Fictitious /Incorrect Name) form, which stated the true name of the defendant was not "Universal Music Publishing Group," but rather "Universal Music Group (UMG) Recordings, Inc." The trial court denied UMP's request for dismissal but struck the third amended complaint for being improper in form.[2] The court indicated Miller would be allowed to file a "fourth amended complaint."

On June 27, Miller filed a fourth amended complaint. That same day, he filed a second form titled Amendment to Complaint

---

[2]     According to UMP's counsel's declaration submitted in support of a subsequent demurrer, the complaint violated format rules by, for example, including affidavits with the pleading.

3

(Fictitious/Incorrect Name), which stated that the true name of the defendant was "UMPG Defendant Doe." Pursuant to the form, the fourth amended complaint was thus amended to replace every reference to "Universal Music Publishing Group" with "UMPG Defendant Doe."

On July 1, Miller served a request for production of documents on UMP, directed to "Defendant UMPG." UMP responded in August 2022.[3] In October 2022, Miller served a second request for production of documents on UMP. Miller directed the request to "Defendant Universal Music Publishing Group (UMPG) and/or UMPG Defendant Doe . . . ." The request demanded the same documents as Miller's first request.

***Ex Parte Applications and the Trial Court's Order to Show Cause Regarding Sanctions***

As noted above, on June 27, 2022, Miller filed the operative fourth amended complaint. However, on July 2, Miller served UMP with a document titled " 'third amended complaint (revised).' " Miller did not file this pleading with the court. On July 11, Miller filed an ex parte application for an extension of time to file a "revised" third amended complaint, which the trial court rejected.

---

[3] UMP's response is not included in the record. Miller "attests" to a portion of the response in his opening brief without any citation to the record. We cannot consider these unsupported factual statements. (*Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 451 [statements of facts in briefs "not supported by references to the record may be disregarded" by the reviewing court]; *Foster v. Civil Service Com.* (1983) 142 Cal.App.3d 444, 449 [appellant's facts in brief without support in the record are not considered by reviewing court].)

Two days later, on July 13, Miller filed a second ex parte application seeking leave to file an additional pleading titled "Fourth Amended Complaint."  At a subsequent July 14 hearing, the trial court denied the ex parte application, clarifying that the operative complaint was the fourth amended complaint already filed on June 27.  The court also concluded Miller's ex parte application was "frivolous and may have been filed in bad faith," and issued an order to show cause regarding sanctions.  The court ordered that if UMP wished to potentially recover the attorney fees it incurred in opposing the ex parte application, it was to file an appropriate request.  Miller nonetheless emailed and delivered to UMP a copy of an *amended* fourth amended complaint several days after the July 14 hearing.

In late July 2022, Miller filed his response to the trial court's order to show cause regarding sanctions.  He detailed a chronology in which he appeared to contend that his attempts to file various versions of a third and fourth amended complaint were the result of filing errors, error in the court docket, and "inartful" drafting on his part.  In one portion of the response, he asserted that he and UMP had an unscheduled call with the court on June 28 about a June 6 ex parte application seeking more time to file a fourth amended complaint.

In August 2022, UMP filed a request for attorney fees, pursuant to the court's prior order.  In October 2022, Miller filed a reply to this request.  He repeated many of the arguments he made in his response to the order to show cause.

***Fourth Amended Complaint and Demurrer***

The operative fourth amended complaint alleged various breach of contract claims against UMPG Defendant Doe.  The complaint alleged UMPG Defendant Doe is a multinational music

5

publishing and recording company that encompasses various other entities, including Warner Music Group, Inc., Island Records, Inc., and Def Jam Recordings, Inc. The complaint also named UMP and one of its corporate officers, Jody "Gerson," as parties. The complaint did not explain how UMP is related to UMPG Defendant Doe or UMPG, or assert any allegations against UMP.

The complaint asserted Miller would serve UMPG Defendant Doe with a request for production of documents "in order to determine the correct identities of [the] Defendants . . . ." It also claimed the other party to the alleged contract was UMPG Defendant Doe or a "yet unidentified UMPG defendant Doe." The complaint purported to seek the joinder of an "unidentified UMPG Doe as Defendant."

As to the substance of Miller's claims, the complaint alleged Miller owned, operated, and produced music for the "internet recording service company" Five Guys with Laptops. According to the complaint, "by virtue of his live performances on 1,254 [UMPG Defendant Doe] recordings," Miller had part ownership in the recordings, which included "Don't Worry be Happy," by Bobby McFerrin, "Happy," by Pharrell Williams, and "I'm so Fancy," by Iggy Azalea.

Miller alleged that in April 2016, his unnamed agent negotiated an agreement providing that UMPG Defendant Doe would acquire all of Five Guys with Laptops' assets, including copyrights. As indicated by modifications to a standard contract, UMPG Defendant Doe also agreed to correct the metadata in prior recordings "by replacing various pseudonyms and stage names with Miller's real name," and to refrain from interfering with "ownership of [Miller's] copyright publishing rights in the

6

future." Miller alleged he never saw the final contract. He further admitted: "Plaintiff cannot produce the modified agreement nor state verbatim terms without recourse to standard UMPG sale and purchase agreements in use circa April 2016. Plaintiff therefore will request the Court for a continuance or in the alternate would ask the Court to hold this TAC in pending status until 30 days following a UMPG reply to or compliance with the attached request for production of documents and things which is attached hereto."

The complaint asserted breach of contract claims against UMPG Defendant Doe based on its denial that a contract existed, its failure to pay Miller for his work and to correct the metadata, and its obstruction of his accounts with music royalties distribution companies. Miller sought $19 million in damages and rescission of the contract, but also asserted that, "in lieu of rescission," he would accept $3 billion and the "retention of publication rights."

On July 27, 2022, UMP demurred to the fourth amended complaint. UMP argued the complaint failed to identify the parties to the contract and lacked allegations regarding the contract's terms and legal effect, along with various other deficiencies.

Miller did not oppose UMP's demurrer. Instead, in October 2022, he filed a "request to sustain defendants' demurrer with leave to amend [and] file a fifth amended complaint due within thirty days of defendants' substantive reply to or compliance with [plaintiff's] second request for production of documents and things." Miller's request stated, "Plaintiff agrees with Defendant that the demurrer should be sustained but with leave to amend by filing a fifth amended complaint which more accurately

7

identifies the parties." Miller also requested time to conduct discovery before filing the amended complaint so that he could "accurately name[ ] Defendants" and identify the contract's terms.

UMP filed a reply. Attached was a declaration from UMP's counsel stating that Miller's July and October requests for production of documents were identical, UMP had already responded to the first request in August, and Miller had neither requested a meet and confer concerning UMP's response nor filed a motion to compel. Among other things, UMP argued that Miller should not be allowed to amend his complaint since he had admitted UMP was not the proper defendant and he did not know the identity of the other party to the contract.

Miller filed a surreply in which he again urged the court to sustain the demurrer, but with leave to amend so that he could conduct additional discovery. He also stated that UMP was part of UMPG and was "not the sole defendant."

***Hearing and Ruling on the Demurrer and Sanctions***

On October 19 and 20, 2022, the trial court held a hearing on UMP's demurrer and the order to show cause regarding sanctions against Miller. As reflected in an October 20 minute order, the court sustained the demurrer without leave to amend and imposed sanctions. It reasoned the complaint included allegations demonstrating Miller did not know the identity of the parties to the alleged contract, the case had been pending for two years, Miller already had time to conduct discovery and had done so, and he merely sought more time to request the same documents from UMP that he previously requested.

On the issue of sanctions, the court determined Miller's July 13 ex parte application was frivolous and filed in bad faith

8

because it sought additional time to file an amended complaint after Miller had already filed a fourth amended complaint on June 27. The court also found sanctions were warranted based on Miller's late-filed response to UMP's request for fees and Miller's false representations about a conference call with the court that never occurred. The court ordered Miller to pay UMP $3,500 in attorney fees as sanctions under Code of Civil Procedure section 128.5.[4]

Miller timely appealed from the trial court judgment.[5]

## DISCUSSION

Miller contends the trial court abused its discretion in denying him leave to file a fifth amended complaint. He also appears to argue that he now can assert fraud, abuse of process, and Cartwright Act claims against UMP. Finally, Miller purports to challenge the trial court's sanctions award. We find no reversible error and affirm.

## I. The Trial Court Did Not Abuse Its Discretion by Denying Leave to File a Fifth Amended Complaint

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect

---

[4]     Under this provision, a trial court may order a party to pay the "reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 128.5, subd. (a).)

[5]     On October 24, 2022, the trial court issued a general judgment reflecting the order dismissing Miller's complaint with prejudice. In March 2023, the trial court issued an amended judgment reflecting the imposition of sanctions, citing the October 20, 2022 minute order.

9

can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609; accord, *State Dept. of State Hospitals v. Superior Court* (2022) 84 Cal.App.5th 1069, 1076.) A trial court does not abuse its discretion by denying leave to amend if the proposed amendment is not "apparent or consistent" with the plaintiff's original theory of the case. (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731.) On appeal, we assume the truth of the properly pleaded factual allegations and do not assume the truth of contentions, deductions, or conclusions of law. (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 532.)

Miller argues the trial court erred in denying him leave to file a fifth amended complaint that would allege: (1) copyright and contract claims based on "only one UMPG, et al[.], electronic recording," titled either " 'Big Bass-woofer' " or "Big Subwoofer," and released in October 2021; (2) that this recording was "published by Universal Music Publishing and that the recording label Def Jam is owned by Universal Music Group, and that Universal Music Publishing, and Def Jam Records would be added as defendants"; (3) the "verbatim" terms of the agreement; (4) an implied agreement claim; and (5) "fraud, false pretense[,] and Cartwright Act claims omitted from [the] first complaint." He further asserts the amended complaint would "make only a single request for production of documents and things," and he would propose filing "motions in limine to allow the forensic

10

analysis of a single recording to ascertain whether or not Appellant is a contributor to that electronic recording."

The trial court did not abuse its discretion in denying Miller leave to amend. None of his proposed amendments address the reason the trial court denied leave to amend: Miller's admission that he did not know the other parties to the alleged contract and needed time to conduct discovery to identify them. Miller's complaint stated he needed discovery "*to determine the correct identities of* [*the*] *Defendants . . . .*" (Italics added.) In his "request to sustain" the demurrer, he asked for leave to file an amended complaint that "more accurately identifies the parties," with a deadline of at least 30 days following UMP's response to his second request for production of documents.

To the extent Miller now seeks to add an allegation regarding UMP, he does not propose an amendment or otherwise explain that he now knows UMP is a party to the contract. He similarly does not assert the new potential defendants were parties to the contract. Indeed, Miller has admitted he never saw the final contract and he does not claim to have any new information about it. While Miller suggests a fifth amended complaint would limit the allegations to one recording published by UMP, he does not indicate that UMP was the other party to the contract which forms the basis of his claims. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162 ["plaintiff bears the burden of proving an amendment could cure the defect"].)

"[W]hen a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier." (*Banis*

11

*Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044.)  Miller admits on appeal that he still does not know the identities of the proper defendants, stating "[a]ppellant attests that he is in general agreement with Defendant and the Court . . . .  [¶] Appellant freely acknowledges that he is confused about the identity of the successors in interest to the agreement he and others were signatories to in April 2016."

In addition, Miller does not explain how serving the same discovery on UMP a second time is likely to help him identify the parties to the alleged contract and correct the other deficiencies asserted in UMP's unopposed demurrer.[6]  "[A] vague suggestion that additional facts might be uncovered through discovery is insufficient to justify allowing" further leave to amend the complaint.  (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1020.)

The trial court did not abuse its discretion in denying leave to amend because there is no reasonable possibility Miller's proposed amendments will cure the defect of not knowing the identities of the defendants he is attempting to sue.  (See *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603,

---

[6]    Miller argues that he did not have the opportunity to conduct discovery until May 2022, when the court sustained UMP's demurrer with leave to amend.  However, he cites only the trial court's January 14, 2022 ruling on his "motion for admission of electronic recordings and forensic analysis for a limited purpose."  In that motion, Miller argued the court should admit 20 recordings "to establish the authenticity of [his] voice."  The trial court found this request premature as there was a pending demurrer and the motion would be more appropriate closer to trial, most likely as a motion in limine.  The denial of the motion does not establish that the trial court erred in denying Miller more time to conduct discovery.

608 [affirming denial of leave to amend to file an untimely fourth amended complaint after the trial court sustained the demurrer after finding the pleading uncertain as to the identity of the parties].) Miller had multiple opportunities to amend his complaint. After remand from the federal district court, he filed a 500-page second amended complaint with "hundreds of pages of extraneous materials." He then filed an untimely third amended complaint that did not conform to court rules. The trial court still allowed him to file the operative fourth amended complaint. Given Miller's multiple opportunities to amend, and his continued and conceded inability to identify the other party to the contract which forms the basis of his claims, the trial court did not abuse its discretion in denying Miller leave to file a fifth amended complaint. (*Williamson v. Genentech, Inc.* (2023) 94 Cal.App.5th 410, 418 [no abuse of discretion in denying leave to amend where the plaintiff had three prior opportunities to amend the complaint and "fail[ed] to identify any substitute plaintiff"].)

On appeal, Miller also argues that UMPG acted fraudulently, its actions constituted an abuse of process, and it violated the Cartwright Act. These claims involve vague assertions of unnamed third-party attorney telephone calls and callers seeking case documents; UMPG lies; UMPG blocking Miller's "interactions with music rights organizations"; and Miller's unsupported assertion that UMP demurred to his stricken third amended complaint and its corresponding Amendment to Complaint (Fictitious /Incorrect Name) form dated June 20, not to the operative fourth amended complaint, to

13

"defraud" the court and "confuse" Miller.[7]  Miller further states that it is the "content" of UMP's demurrer and reply to his first request for production of documents that "are the basis for fraud claims against UMPG . . . ."

Miller does not explain how these contentions relate to the ruling at issue on appeal.  It does not appear that Miller asserted these arguments before the trial court when it considered UMP's demurrer.  However, to the extent Miller now suggests he could amend his complaint to add these allegations, we would still find no basis to reverse the trial court's order denying leave to amend.  Miller does not provide any reasoned legal argument or citation to legal authorities to establish he can allege facts that, if true, would support the new additional claims he references on appeal.  He further has not established, with legal analysis or citation to legal authorities, that, if granted leave to amend, he could state a new, legitimate claim based on UMP's litigation conduct.  Such

---

[7]  The record does not support Miller's assertion that UMP's demurrer addressed the wrong complaint or was based on stricken filings.  UMP demurred to Miller's fourth amended complaint.  The demurrer referenced allegations in that complaint that Miller does not know the identities of the parties to the contract and that he planned to file discovery to identify the parties.  Moreover, UMP stated in its demurrer that, along with his fourth amended complaint, Miller filed a form substituting "UMPG Defendant Doe" for "Universal Music Publishing Group."  This was Miller's *second* form titled Amendment to Complaint (Fictitious/Incorrect Name), which stated that the true name of the defendant was "UMPG Defendant Doe."  The form was filed the same day as the fourth amended complaint, on June 27.  We thus find no support for Miller's claim that UMP's demurrer was based on any document stricken from the record.

14

unsupported assertions on appeal are insufficient. The failure to support claims with legal arguments or legal authorities forfeits such contentions. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta Stewardship*); *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 (*Lee*); *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).)

## II. The Sanctions Award and Request for Judicial Notice on Appeal

In Miller's opening brief, he "relegates the discussion regarding sanctions to the accompanying Request for Judicial Notice." However, in the request for judicial notice, Miller does not argue that the trial court erred in awarding sanctions. Instead, he asks us to take judicial notice of his October 2022 response to the trial court's order to show cause regarding sanctions.

To the extent Miller's request for judicial notice of the October 2022 brief filed in the trial court is an attempt to re-state those arguments on appeal, we must reject it. " ' "[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." ' [Citation.] 'An appellant cannot rely on incorporation of trial court papers, but must tender arguments *in the appellate briefs*.' [Citations.]" (*Limon v. Circle K Stores, Inc.* (2022) 84 Cal.App.5th 671, 687, citing *Garrick Development Co. v. Hayward Unified School District* (1992) 3 Cal.App.4th 320, 334 ["Rather than brief those arguments, [appellants] purport to 'incorporate' them from papers filed below. We do not consider such arguments on appeal"].)

15

Miller's oblique references in his opening brief to some of the facts underlying the trial court's sanctions order also do not constitute cognizable claims of error.  Miller has not provided reasoned legal argument, citations to relevant legal authorities, or citations to the record regarding any alleged trial court error in awarding sanctions.  (*Lee, supra*, 41 Cal.App.5th at p. 721 [it is the appellant's burden to provide reasoned argument and citations to legal authority]; *Hernandez, supra*, 37 Cal.App.5th at p. 277 [it is the appellant's burden to provide adequate record citations].)  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."  (*Delta Stewardship, supra*, 48 Cal.App.5th at p. 1075.)  These "same rules apply to a party appearing in propria persona as to any other party." (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205.)  Accordingly, Miller has not established reversible error.  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [trial court judgment is presumed correct, and it is appellant's burden to demonstrate error].)

Finally, we otherwise deny the request for judicial notice. Miller requested judicial notice of four documents: (1) his reply to UMP's request for sanctions/attorney fees, which he admits is already in the record; (2) the federal district court's remand order; (3) a Court of Appeal opinion and petition for review to the California Supreme Court in an unrelated case in which Miller is also the plaintiff, to show the "similarity of the case tactics used by opposing counsel in both cases"; and (4) "an internet sourced statement" ostensibly from Miller's cell phone provider, which is an unattributed typed paragraph on an otherwise blank page, to show "not every cell phone call appears on monthly bills."

16

Miller's request for judicial notice of his reply brief is unnecessary because it is part of the record. (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 673, fn. 4.) We decline to take judicial notice of the remaining documents because, even if there was a statutory basis for us to do so, the documents are "not relevant to an issue that is necessary to our disposition." (*City of Hesperia v. Lake Arrowhead Community Services Dist.* (2023) 93 Cal.App.5th 489, 508.)

**DISPOSITION**

The trial court judgment is affirmed.  Respondent to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.

We concur:


LAVIN, Acting P. J.


BERSHON, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.